[Cite as *State v. Jackson*, 2012-Ohio-5548.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012-CA-20 |
| GREGORY JACKSON | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Richland County Court of Common Pleas, Case No. 2011-CR-560D

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      November 29, 2012

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN NIEFT                                   EDWIN VARGAS
Assistant Prosecuting Attorney          Vargas Law Firm
38 South Park Street                    The Gehring Building
Mansfield, OH 44902             1956 West 25th Street, Suite 302
                                         Cleveland, OH 44113

*Gwin, P.J.*

{¶1} Appellant Gregory L. Jackson ("Jackson") appeals from the March 7, 2012 judgment entry of the Richland County Court of Common Pleas convicting him of two counts of Having Weapons While Under a Disability felonies of the third degree in violation of R.C. 2923.13 and one count of Possession of Heroin, in an amount exceeding ten grams but not exceeding 50 grams, a felony of the second degree in violation of R.C. 2925.11(A). Plaintiff-appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} Jackson was released on parole in September 2010 from prison after serving 20 years for murder. Parole officer Kenneth Kaufman ("Kaufman") supervised him. Jackson moved recently to 628 Johns Avenue with his wife Tonya Jackson. ("Tonya").

{¶3} About August 16, 2011, Gerado Wilson called 9-1-1 to report that a man named "Greg" whose nickname was "Dirty" robbed him at gunpoint. He said that Greg had been recently released from prison after serving 20 years for murder. Wilson described his assailant's car.

{¶4} On the morning of August 17, 2011, a caller who refused to give his identity called 9-1-1 to say he had just seen a man get out of a maroon Chevrolet Suburban brandishing a gun on Johns Avenue. He also gave the license plate number on the car as FGS 8760.

{¶5} The police dispatcher ran the license number and it came back to a red Chevrolet Suburban owned by Jackson, who had the alias "Dirty." When officers were dispatched to the scene, the dispatcher reminded them the likely connection between

the armed robbery reported the previous day and the man with a gun on Johns Avenue to which they were dispatched.

{¶6} Officers also asked that Jackson's parole officer be contacted to assist them. The dispatcher arranged for Kaufman to come to the scene. The officers found Jackson's Suburban parked on Johns Avenue near 638 and 642 Johns Avenue, but were not sure in which house Jackson could be found. They also feared to enter with an armed suspect. Officers obtained Jackson's telephone number from Kaufman and called the number in an attempt to have Jackson come out of the house.

{¶7} The police called three times and spoke to both Jackson and Tonya. Shortly thereafter, a police officer who had been stationed behind the houses saw Jackson stick his head out the side door at 628 Johns Avenue. Jackson sprinted away when he saw the officer. Jackson ran into Kaufman and a police officer before he could get more than 20 feet from the door. They arrested Jackson and placed him in a cruiser.

{¶8} Jackson had come out of the house without the reported gun, and officers knew there was at least one additional person in the house. They decided to do a "protective sweep" through the house to see if there was anyone else in the house.

{¶9} The officers brought Tonya out on the porch of the home while officers looked through the first and second floor and the basement. No other persons were found, and no incriminating evidence was discovered. The house was full of boxes and totes filled with household goods, showing evidence of a recent move.

{¶10} Parole office Kaufman had been instructed by his supervisor to search the house from top to bottom for the gun under the parole officer's authority to search a parolee's residence. Officer Rich Miller recognized Tonya from a previous encounter

and began talking to her. He explained to her that they had to search for the gun described in the reports and asked her permission to search. Tonya said she did not want all the drawers and boxes in her house dumped out on the floor. Officer Miller promised her they would not do that.

{¶11} Officer Miller called the dispatcher to have a consent to search form sent to the house. Officer Miller reviewed the consent form with Tonya. Tonya filled in her name and address at the top and signed the consent form. Officer Miller filled in the date and witnessed Tonya's signature.

{¶12} During the search of the house, in Jackson's bedroom, Officer Vanosdale found a backpack with a handgun and drugs as well as a shaving kit with another handgun. Bill Adams of the Mansfield Police Department Crime Laboratory was then called to the scene to photograph and seize the evidence, which he did. Also found inside the backpack in Jackson's bedroom was latex gloves, bullets, scales, and various small bags.

{¶13} The guns were found to be operable. The drugs found were tested and found to be 6.16 grams of marijuana and 11.85 grams of heroin.

{¶14} Jackson was indicted by the Richland County Grand Jury on three counts. Jackson moved to suppress the evidence found in the search due to a lack of reasonable suspicion for Kaufman to authorize a search and lack of voluntary consent from Tonya.

{¶15} During the suppression hearing Jackson presented evidence from a neighbor who testified that she had seen and heard the Mansfield Police Department kick in the door to Jackson's home from a few houses down. Tonya testified the front

door was locked with a deadbolt and that the police kicked in the door. She brought in photos, which do not show a deadbolt but only a standard latch strike plate in a splintered and badly deteriorated doorframe. Tonya further testified that she signed the form under duress and without knowledge of its contents. Tonya testified that Officer Miller told her that if she did not sign the form she would go to jail. In fact, she testified that she told the police while she was on the porch of her house that she did not want them to search her house without a warrant. Tonya also admitted completing and signing the consent form, as well as verbally confirming that information in a tape-recorded statement taken by Officer Miller.

{¶16} By Judgment Entry filed February 28, 2012, the trial court overruled Jackson's motion to suppress. After a two-day trial, the jury returned with verdicts of guilty on all charges. On March 7, 2012, Jackson was sentence to eight years on Count Three possession of heroin in excess of 10 grams in violation of R.C. 2925.11, a felony of the second degree and to three years on Counts One and Two violations of having a weapon while under disability, in violation of R.C. 2923.13, felonies of the third degree. All counts were to be served concurrently, for an aggregate sentence of eight years.

*ASSIGNMENTS OF ERROR*

{¶17} Jackson raises five assignments of error,

{¶18} "I. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS WHEN THE APPELLANT'S FOURTH AMENDMENT RIGHTS WERE VIOLATED BY A WARRANTLESS SEARCH.

{¶19} "II. THE TRIAL COURT ERRED IN ADMITING [SIC.] THE TESTIMONY RELATED TO THE LAB RESULTS OF TESTS PERFORMED WITHOUT THE

TESTIMONY OF THE ACTUAL LAB TECHICIAN [SIC.] WHO CONDUCTED THE TESTS VIOLATING THE DEFENDANTS RIGHT TO CONFRONTATION.

**{¶20}** "III. THE APPELLANT'S TRIAL ATTORNEY PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO THE TESTIMONY OF ADAMS AND ADMISSION OF TESTIMONY RELATED TO THE LAB RESULTS OF TESTS PERFORMED WITHOUT THE TESTIMONY OF THE ACTUAL LAB TECHICIAN [SIC.] WHO CONDUCTED THE TESTS.

**{¶21}** "IV. APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶22}** "V. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL, BECAUSE THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE VERDICT, AND IN SO DOING, DENIED THE APPELLANT DUE PROCESS OF LAW."

I.

**{¶23}** Jackson contends that the trial court erred by overruling his motion to suppress. Jackson argues that his motion to suppress evidence was improperly overruled because 1). The Mansfield Police Department did not have probable cause; 2). The consent granted by Tonya Jackson was not voluntary, and 3.) Kaufman did not have a reasonable suspicion to support a search and in fact, he did not conduct a search.

**{¶24}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 154-155, 797 N.E.2d 71, 74, 2003-Ohio-5372, ¶8. When ruling on a motion to suppress, the trial court assumes the role of

trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988(1995); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583(1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra. However, once an appellate court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, also, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

{¶25} In *Michigan v. Fischer*, the United States Supreme Court observed,

"[T]he ultimate touchstone of the Fourth Amendment," we have often said, "is 'reasonableness.'" [*Brigham City v. Stuart*, 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006)] at 403, 126 S.Ct. 1943. Therefore, although "searches and seizures inside a home without a warrant are presumptively unreasonable," *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (internal quotation marks omitted), that presumption can be overcome. For example, "the exigencies of the situation [may] make the needs of law enforcement so compelling

that the warrantless search is objectively reasonable." *Mincey v. Arizona*,

437 U.S. 385, 393–394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

558 U.S. 45, 130 S.Ct. 546, 548, 175 L.Ed.2d 410.

*A. Consent to Search*

**{¶26}** One well-established exception to the warrant requirement is the consent search. No Fourth Amendment violation occurs when an individual voluntarily consents to a search. *See United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242(2002) (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854(1973) ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); *State v. Comen*, 50 Ohio St.3d 206, 211, 553 N.E.2d 640(1990). In *Schneckloth*, the United States Supreme Court acknowledged the importance of consent searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal. Id. at 227–228. See, also, *State v. Fry*, 4th Dist. No. 03CA26, 2004–Ohio–5747, ¶18.

**{¶27}** The United States Supreme Court further noted, "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *I.N.S. v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247(1984); *Drayton*, *supra*, 536 U.S. at 205, 122 S.Ct. at 2113. Moreover, a voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." *Schneckloth v.*

*Bustamonte,* 412 U.S. 218, 235, 93 S.Ct. 2041, 36 L.Ed.2d 854(1983), (*quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1464(1938)); *State v. Barnes*, 25 Ohio St.3d 203, 495 N.E.2d 922(1986); *State v. McConnell*, 5th Dist. No. 2002CA00048, 2002-Ohio-5300, ¶8. Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. Id. Further, "[v]oluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search." *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762(1997), citing *United States v. Davis,* 328 U.S. 582, 593-594, 66 S.Ct. 1256, 90 L.Ed. 1453(1946). The voluntariness of a consent to a search is a question of fact and will not be reversed on appeal unless clearly erroneous. *State v. Clelland*, 83 Ohio App.3d 474, 615 N.E.2d 276 (4th Dist. 1992).

**{¶28}** In *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762(1997), the Supreme Court noted,

> We find *Bustamonte* instructive in defining when permission to search is truly consensual under the totality of the circumstances:
>
> '[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to

demonstrate such knowledge as a prerequisite to establishing a voluntary

consent.' *Id.,* 412 U.S. at 248-249, 93 S.Ct. at 2059, 36 L.Ed.2d at 875.

80 Ohio St.3d at 242-243, 685 N.E.2d at 769.

**{¶29}** The burden of proving that the suspect voluntarily consented to the search

rests upon the prosecution. *Schneckloth, supra; Danby, supra*; *Bumper v. North*

*Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797(1968); *State v. Hassey*, 9 Ohio

App.3d 231, 459 N.E.2d 573(10th Dist. 1983); *State v. Pi Kappa Alpha Fraternity*, 23

Ohio St.3d 141, 491 N.E.2d 1129(1986). The state's burden is not satisfied by showing

a mere submission to a claim of lawful authority. *Robinette,* 80 Ohio St.3d at 243, 685

N.E.2d at 770.

**{¶30}** Consent to enter a residence can be given by anyone who possesses

common authority over the premises, and in particular, by the resident of a home. *See*

*United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242(1974); *State v.*

*Greer,* 39 Ohio St.3d 236, 530 N.E.2d 382(1988).

**{¶31}** Jackson argues that Tonya did not voluntarily consent to the search of the

home. Jackson supports his position with Tonya's testimony during the suppression

hearing. Tonya testified that police busted in her front door before she could answer it,

took her outside, threatened her with jail, and forced her to sign forms without her

knowledge of what they were. She identified pictures of a broken doorframe to support

her argument at the suppression hearing.

**{¶32}** In the judgment entry overruling Jackson's motion to suppress, the trial

judge found,

Mrs. Jackson said the front door was locked with a deadbolt and that the police kicked in the door. She brought in photos, which do not show a deadbolt but only a standard latch strike plate in a splintered and badly deteriorated doorframe. The pictures are undated and are such close-ups that nothing can be identified of the building in which the frame is located except that the exterior trim of the doorframe is painted white. But the Jacksons's house was yellow with brown trim. Mrs. Jackson's testimony was not persuasive.

{¶33} In *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972(1992), the Ohio Supreme Court noted that the evaluation of evidence and the credibility of the witnesses are issues for the trier of fact in the hearing on the motion to suppress. Id. at 366, 582 N.E.2d at 981-982. The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence.

{¶34} An appellate court's role in reviewing a trial court's ruling on a motion to suppress is not to reevaluate the evidence or the credibility of the witnesses, but to determine whether the trial court's application of the law to the facts, as the trial court found them to be, is appropriate. *Mills*, 62 Ohio St.3d at 366, 582 N.E.2d 972; *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141(4th Dist. 1993).

{¶35} We hold that the evidence in this case adequately supports the trial court's finding that Tonya gave her voluntary consent to search the premises. Tonya was not in custody, nor was she suspected of wrongdoing. Tonya filled out the written consent form. That form, admitted during the suppression hearing, clearly informed

Tonya of her right to refuse consent to the search. Evidence of a written waiver form signed by the accused is strong proof that the waiver was valid. *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844(1988)*;* see *North Carolina v. Butler*, 441 U.S. 369, 374-375, 99 S.Ct. 1755, 1758-1759, 60 L.Ed.2d 286, 293(1979); *State v. Dennis*, 79 Ohio St.3d 421, 425, 1997-Ohio-372, 683 N.E.2d 1096. Additionally, three officers testified that Tanya was compliant and cooperative with the officers and gave consent to search the house.

**{¶36}** The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 1997-Ohio-260, 674 N.E.2d 1159. Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008–Ohio–6635, ¶31, quoting *State v. Woullard,* 158 Ohio App.3d 31, 2004–Ohio–3395, 813 N.E.2d 964(2nd Dist.), ¶81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002–Ohio–1152, at ¶13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶37}** In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland,* 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477–478. (Emphasis added).

**{¶38}** Based on the totality of the circumstances presented, we conclude Tonya gave her voluntary consent to the officers to search the home.

*B. Search Pursuant to Conditions of Supervision*

**{¶39}** In addition, parole officer Kaufman had reasonable suspicion to conduct a warrantless search of Jackson's residence.

**{¶40}** In Ohio, during a period of parole, an authorized adult parole authority officer may search with or without a warrant,

The person or the individual or felon, the place of residence of the individual or felon, and a motor vehicle, another item of tangible or intangible property or the other real property in which the individual felon has a right, title, or interest or for which the individual or felon has the

express or implied permission of a person with a right, title or interest to use, occupy, or possess, if the field officer has reasonable grounds to believe that the individual * * *is not abiding by the law, or is not complying with the terms and conditions of the individual's or felon's * * *parole* * *.

R.C. 2967.131(C). "Probable cause" is not required to conduct a warrantless search of a parolee pursuant to R.C. 2967.131(C); rather the standard is "reasonable grounds."

**{¶41}** Reasonable suspicion "is based on the totality of the circumstances and has been defined as requiring 'articulable reasons' and 'a particularized and objective basis for suspecting the particular person.'" *United States v. Payne,* 181 F.3d 781, 788(6th Cir. 1999), citing *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621(1981). "Courts analyzing searches under the reasonable suspicion standard use the same factors but require a less demanding showing than when applying a probable cause standard." *Id.* at 790. "Ohio's 'reasonable grounds' standard mirrors ... the federal reasonable suspicion standard." *United States v. Loney,* 331 F.3d 516, 520 (6th Cir. 2003).

**{¶42}** In this case, the reasonable grounds standard was satisfied.

**{¶43}** On or about August 16, 2011, Gerado Wilson called 9-1-1 to report that a man named "Greg" whose nickname was "Dirty" robbed him at gunpoint. He said that Greg had been recently released from prison after serving 20 years for murder, and he described Greg's car. Jackson's name is "Greg"; Jackson's nickname is "Dirty"; Jackson was released after serving 20 years for murder; the description of the vehicle given by Wilson matched Jackson's vehicle.

{¶44} On or about August 17, 2011, a caller who refused to give his identity called 9-1-1 to say he had just seen a man get out of a maroon Chevrolet Suburban brandishing a gun on Johns Avenue. He also gave the license plate number on the car as FGS 8760. Jackson drove a red Chevrolet Suburban with license plate number FGS 8760.

{¶45} The police and the parole officer called Jackson while they waited outside the residence in an attempt to speak with him about the aforementioned incidents involving a weapon. The police spoke to Jackson and Tonya. Each time Jackson told the officers that he was getting dressed and would come outside. Instead, Jackson attempted to flee by going out the side door of the residence.

{¶46} These facts sufficed to establish reasonable grounds to suspect that Jackson was not complying with the conditions of his parole. Parole officer Kaufman was therefore justified in conducting a warrantless search of Jackson's residence pursuant to R.C. 2967.131(C).

{¶47} The issue is whether the parole officer had a reasonable suspicion; if he or she does, the Fourth Amendment does not prohibit a law enforcement officer, acting on the request of the probation or parole officer, from assisting in conducting the search. Jackson cites no authority to the contrary. Here the officers had contacted Jackson's parole officer and he was present at the residence. The search was based upon Jackson's status as a parolee.

{¶48} We further note that the Supreme Court has upheld a search of a probationer's property based on reasonable grounds even though the police failed "to secure the assistance of [the probationer's] own probation officer" and were

accompanied by a different probation officer. *Griffin v. Wisconsin,* 483 U.S. 868, 871, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).

**{¶49}** Jackson's second assignment of error is overruled in its entirety.

III.

**{¶50}** In the case at bar, the trial court admitted into evidence pursuant to R.C. 2925.51 affidavits reporting the results of forensic analysis, which showed that material, seized by the police and connected to Jackson, was heroin weighing 11.85 grams. Jackson argues that the state admitted this evidence through the in-court testimony of a scientist who did not sign the certification, perform, or observe the test reported in the certification.

**{¶51}** Jackson's third assignment of error is that he was denied the effective assistance of counsel because trial counsel failed to object to the testimony and the laboratory report as violative of his right of confrontation under the Sixth Amendment.

**{¶52}** The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

**{¶53}** "A state forensic analyst's laboratory report prepared for use in a criminal prosecution is 'testimonial' evidence subject to the demands of the Confrontation Clause as set forth in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)." See *Melendez–Diaz v. Massachusetts* (2008), —— U.S. ——, 128 S.Ct. 1647, 170 L.Ed.2d 352.

**{¶54}** Waiver is the intentional relinquishment or abandonment of a known right. *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993). See

*State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶23. Confrontation Clause rights, like other constitutional rights, can be waived. *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶14.

**{¶55}** R.C. 2925.51,

specifically details the information that the report must contain, R.C. 2925.51(A), and places a specific obligation on the prosecuting attorney to serve the report on the accused or the accused's attorney, R.C. 2925.51(B). The statute also requires that the report must contain notice of the accused's right to demand the testimony of the signer of the report, R.C. 2925.51(D), and specifies that the report will not be prima facie evidence of the test results if the accused or his attorney (if he is represented by one) demands the testimony of the report's signer by serving the demand upon the prosecuting attorney within seven days of the accused's attorney's receipt of the report, a time that can be extended by the trial judge, R.C. 2925.51(C). The obvious import of R.C. 2925.51(C) is that if a demand is not made for the testimony of the signer of the report, the report will be prima facie evidence of the test results.

*Pasqualone*, ¶16.

**{¶56}** In *Pasqualone,* the Ohio Supreme Court held,

When the state has complied with its obligations under R.C. 2925.51, a defendant's failure to use the procedures of R.C. 2925.51(C) to demand that a laboratory analyst testify constitutes a waiver of the

opportunity to cross-examine the analyst at trial and allows the analyst's

report to be admitted as prima facie evidence of the test results.

121 Ohio St.3d 186, 903 N.E.2d 270, 2009-Ohio-315, ¶ 43. In the case at bar Jackson's trial attorney was given the Mansfield Police Forensic Science Laboratory Drug Analysis Report. This report contained the analysis of both the marijuana and heroin found in the black backpack. It was signed by Anthony Tambasco. Attached to the drug analysis report was a notarized statement that certified that Anthony Tambasco was an employee of the Mansfield Police Forensic Science Laboratory, that analyzing substances for the presence of controlled substances was part of his regular duties, and included a general outline of his education, training, and experience. This notarized statement also included that the tests were scientifically accepted and performed with due caution. Finally, the statement concluded with a notice that the accused may inform the prosecuting attorney within seven days of receipt of this to compel Anthony Tambasco to testify.

{¶57} Jackson argues, however, that the state was required to present Tambasco at trial citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314(2009). In *Melendez-Diaz,* the Court held that a forensic laboratory report stating that a suspect substance was cocaine ranked as testimonial for purposes of the Sixth Amendment's Confrontation Clause. The report had been created specifically to serve as evidence in a criminal proceeding. Absent stipulation, the Court ruled, the prosecution may not introduce such a report without offering a live witness competent to testify to the truth of the statements made in the report. See, *Bullcoming v. New Mexico*, 564 U.S. __, 131 S.Ct. 2705, 2709, 180 L.Ed.2d 610(2011). However, in

*Melendez-Diaz*, the Court recognized that the procedure employed by R.C. 2925.51(C) adequately protects an accused's right of confrontation,

In their simplest form, notice-and-demand statutes require the prosecution to provide notice to the defendant of its intent to use an analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial. See, *e.g.,* Ga.Code Ann. § 35-3- 154.1 (2006); Tex.Code Crim. Proc. Ann., Art. 38.41, § 4 (Vernon 2005); Ohio Rev.Code Ann. § 2925.51(C) (West 2006). Contrary to the dissent's perception, these statutes shift no burden whatever. The defendant *always* has the burden of raising his Confrontation Clause objection; notice-and-demand statutes simply govern the *time* within which he must do so. States are free to adopt procedural rules governing objections. See *Wainwright v. Sykes,* 433 U.S. 72, 86-87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). It is common to require a defendant to exercise his rights under the Compulsory Process Clause in advance of trial, announcing his intent to present certain witnesses. See Fed. Rules Crim. Proc. 12.1(a), (e), 16(b)(1)(C); Comment: Alibi Notice Rules: The Preclusion Sanction as Procedural Default, 51 U. Chi. L.Rev. 254, 254-255, 281-285 (1984) (discussing and cataloguing State notice-of-alibi rules); *Taylor v. Illinois,* 484 U.S. 400, 411, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); *Williams v. Florida,* 399 U.S. 78, 81-82, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). There is no conceivable reason why he cannot similarly be

compelled to exercise his Confrontation Clause rights before trial. See *Hinojos-Mendoza v. People,* 169 P.3d 662, 670 (Colo.2007) (discussing and approving Colorado's notice-and-demand provision). Today's decision will not disrupt criminal prosecutions in the many large States whose practice is already in accord with the Confrontation Clause.

557 U.S. 305, 129 S.Ct. 2527, 2541, 174 L.Ed.2d 314. Massachusetts did not have a notice-and-demand statute in *Melendez-Diaz,* therefore the state was obligated to produce the analyst at trial.

{¶58} In *State v. McCausland*, the Supreme Court explained,

"an accused's attorney is capable of waiving his [or her] client's right to confrontation by not demanding that a laboratory analyst testify pursuant to the opportunity afforded by [the relevant statute], because whether to cross-examine a particular witness is properly viewed as a decision relating to trial tactics or strategy." [*State v. Pasqualone]* at ¶ 44. We also held that "the procedures of [the statute] adequately protect an accused's right to confrontation, so that an accused who fails to demand the testimony of the analyst pursuant to [the statute] validly waives his opportunity to cross-examine the analyst." Id. We arrived at this conclusion after noting that the relevant question for purposes of the waiver inquiry under the Confrontation Clause of the Sixth Amendment was whether the defendant had an opportunity for cross-examination. Id. at ¶ 35.

124 Ohio St.3d 8, 2009- Ohio- 5933, 918, N.E.2d 507, ¶14. A defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298(1999); *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶150; *State v. Donkers,* 170 Ohio App.3d 509, 2007-Ohio-1557, 867 N.E.2d 903, ¶183(11th Dist.). Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. Id.

{¶59} When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189(1980), citing *People v. Miller* (1972), 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089; *State v. Wiley,* 10th Dist. No. 03AP-340, 2004-Ohio-1008, ¶ 21.

{¶60} In the case at bar, trial counsel failure to require the analyst who performed the test to testify was a tactical decision. In *Melendez-Diaz,* the United States Supreme Court observed,

> But it is not surprising. Defense attorneys and their clients will often stipulate to the nature of the substance in the ordinary drug case. It is unlikely that defense counsel will insist on live testimony whose effect will be merely to highlight rather than cast doubt upon the forensic analysis. Nor will defense attorneys want to antagonize the judge or jury by wasting their time with the appearance of a witness whose testimony defense counsel does not intend to rebut in any fashion.

557 U.S. at 328.

{¶61} Because we have found no instances of error in this case, we find Jackson has not demonstrated that he was prejudiced by trial counsel's performance.

{¶62} Jackson's third assignment of error is overruled.

IV. & V.

{¶63} Because Jackson's fourth and fifth assignments of error each require us to review the evidence, we shall address the assignments collectively.

{¶64} In his fifth assignment of error, Jackson alleges that the trial court erred in not granting his Crim. R. 29 motion for acquittal.

{¶65} In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. *See, e.g., State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 974(1995); *State v. Jenks,* 61 Ohio St.3d 259, 273, 574 N.E.2d 492(1991).

{¶66} In his fourth assignment of error, Jackson maintains that his conviction is against the sufficiency of the evidence and against the manifest weight of the evidence, respectively.

{¶67} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S.120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-

1017, 926 N.E.2d 1239,¶146; *State v. Clay*, 187 Ohio App.3d 633, 2010-Ohio-2720, 933 N.E.2d 296, ¶68.

**{¶68}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541(1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355, 684 N.E.2d 668.* Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶69}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist.

1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶70}** Jackson was found guilty of two counts of Having Weapons While Under Disability in violation of R.C. 2923.13. R.C. 2923.13, states, in pertinent part:

> (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

> * * *

> (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

**{¶71}** In the case at bar, it is clear that Jackson was on parole for murder, a felony of violence. A certified copy of that conviction was entered into evidence during Jackson's trial. It is also clear that a nine-millimeter Hi-Point semi-automatic pistol and a .38 caliber revolver were recovered from the bedroom of the residence.

**{¶72}** Jackson was also convicted of possession of drugs. R.C. 2925.11(A) provides "No person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.11 (B)(6), further provides,

> (d) If the amount of the drug involved ... equals or exceeds ten grams but is less than fifty grams, possession of heroin is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree.

**{¶73}** Evidence concerning the identity and weight of the drugs was properly admitted as we discussed in relation to Jackson's second assignment of error. Thus, only Jackson's argument about his connection to the location where the drugs and weapons were found remains.

**{¶74}** In this case, Tonya, Jackson's wife, gave permission to search the residence. Gerado Wilson testified that on August 16, 2011 Jackson used a gun to rob him at Wilson's home on Bowman Street. Wilson testified that you could see the Johns Avenue residence where Jackson lived from Wilson's home. Wilson identified Jackson in court as the man who had robbed him. Officer Todd Vanosdale testified that during the search of the bedroom at the residence at 628 Johns Avenue he observed mail addressed to Jackson. Officer Vanosdale further testified that the bedroom in which the drugs and weapons were found appeared to be the only bedroom that was occupied at

the residence. Parole officer Kaufman testified that Jackson had reported to him that he changed his address to 628 Johns Avenue.

**{¶75}** We believe that the state presented sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that appellant committed the offenses of possession of heroin a second-degree felony, and two counts of having weapons while under disability.

**{¶76}** R.C. 2925.01(K) defines possession as follows,

"Possess" or "possession" means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.

**{¶77}** R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D)(1).

**{¶78}** Possession may be actual or constructive. *State v. Haynes*, 25 Ohio St.2d 264, 267 N.E.2d 787(1971); *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362(1982), syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351(1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Trebly*, 137 Ohio App.3d 134, 738 N.E.2d 93(8th Dist. 2000). Circumstantial evidence that the defendant was located in very close proximity to readily usable drugs may show constructive possession. *State*

*v. Barr*, 86 Ohio App.3d 227, 235, 620 N.E.2d 242, 247-248(8th Dist. 1993); *State v. Morales*, 5th Dist. No. 2004 CA 68, 2005-Ohio-4714, ¶50; *State v. Moses*, 5th Dist. No. 2003CA00384, 2004-Ohio-4943, ¶9. Ownership of the drugs need not be established for constructive possession. *State v. Smith*, 9th Dist. No. 20885, 2002-Ohio-3034, ¶13, *citing State v. Mann*, 93 Ohio App.3d 301, 308, 638 N.E.2d 585(8th Dist. 1993). Furthermore, possession may be individual or joint. *Wolery*, 46 Ohio St.2d at 332, 348 N.E.2d 351.

{¶79} If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492(1991) at paragraph one of the syllabus. "'Circumstantial evidence and direct evidence inherently possess the same probative value [.]'" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "'[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Jenks,* 61 Ohio St.3d at 272, 574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), *citing Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *State v. Lott,* 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), *citing Hurt*, 164 Ohio St. at 331, 130 N.E.2d 820.

{¶80} Upon a careful review of the record and upon viewing the direct and circumstantial evidence in the light most favorable to the prosecution, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found Jackson guilty of the possession of drugs and weapons offenses.

{¶81} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, quoting *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 81(2nd Dist.). In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002-Ohio-1152, ¶ 13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶82} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord*, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or

sufficiency of the evidence". *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra*.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶83} In *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false. *See Rice v. City of Cleveland,* 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**{¶84}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717(1st Dist. 1983). The jury as the trier of fact was in the best position to evaluate this competent, credible evidence, and we will not substitute our judgment for that of the trier of fact. The jury neither lost its way nor created a miscarriage of justice in convicting Jackson of possession of heroin and having weapons while under disability.

**{¶85}** Jackson's fourth and fifth assignments of error are overruled in their entirety.

**{¶86}** For the foregoing reasons, the judgment of the Court of Common Pleas, of Richland County, Ohio, is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Edwards, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

HON. JULIE A. EDWARDS

WSG:clw 1102

[Cite as *State v. Jackson*, 2012-Ohio-5548.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
              Plaintiff-Appellee       :
                                       :
                                       :
-vs-                                   :          JUDGMENT ENTRY
                                       :
GREGORY JACKSON                        :
                                       :
                                       :
              Defendant-Appellant      :          CASE NO. 2012-CA-20


        For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Court of Common Pleas, of Richland County, Ohio, is affirmed.  Costs to appellant.


                                       _____
                                       HON. W. SCOTT GWIN


                                       _____
                                       HON. WILLIAM B. HOFFMAN


                                       _____
                                       HON. JULIE A. EDWARDS