[Cite as *State v. Taylor*, 2020-Ohio-5097.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 2019 CA 0117 |
| HERBERT TAYLOR | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:     Appeal from the Richland County Court of
                             Common Pleas, Case No. 2019 CR 0341

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      October 29, 2020

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

GARY BISHOP                           ERIC J. ALLEN
Prosecuting Attorney                  4200 Regent, Suite #200
Richland County, Ohio                 Columbus, Ohio  43219

JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio  44902

*Hoffman, P.J.*

{¶1} Defendant-appellant Herbert Taylor appeals his conviction and sentence entered by Richland County Court of Common Pleas, on one count of possession of cocaine with a forfeiture specification, following a jury trial. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2} On April 18, 2019, the Richland County Grand Jury indicted Appellant on one count of possession of cocaine, in violation of R.C. 2925.11(A) and (C)(4)(f), a felony of the first degree, with an attendant forfeiture specification. Appellant appeared for arraignment on April 30, 2019, and entered a plea of not guilty to the Indictment.

{¶3} The trial court originally scheduled the matter for trial on July 8, 2019, but continued the trial until October 28, 2019, upon Appellant's request. Appellant filed a motion to suppress on October 24, 2019. The trial court overruled the motion as untimely pursuant to Crim. R. 12(D).

{¶4} At trial, Cuyahoga County Sheriff's Deputy Michael Twombly, who serves as a detective in the K9 narcotics unit, testified he works on an FBI task force assigned to the postal service. Det. Twombly's duties include parcel interdiction, detecting packages which might contain narcotics. Det. Twombly and his K9 partner, Ciga, were on duty at the Cleveland postal facility on February 7, 2019, when he seized a suspicious package. The detective brought the package to a different area of the facility where it was hidden among parcels, luggage, and other items. When Ciga was unleashed, he alerted to the suspicious package.

{¶5} Det. Twombly sought and obtained a federal search warrant to open the package. Upon opening the package, the detective found what appeared to be a wrapped

gift.  He removed the wrapping paper and discovered a freezer bag of what was ultimately determined to be cocaine.  Det. Twombly explained over 100 grams of the cocaine would be repackaged with a box beacon, a GPS monitoring device which also notifies police when the package is opened,[1] and a controlled delivery would be conducted.

{¶6}    Mansfield Police Sergeant Steve Blust, who is assigned to the METRICH Enforcement Unit, testified he received a phone call on February 7, 2019, from U.S. postal inspectors advising him they had intercepted a package containing cocaine with an intended delivery address of 222 Penn Ave., Mansfield, Ohio.  Postal inspectors delivered the package to Sgt. Blust to conduct the controlled delivery.  The inspectors and Sgt. Blust developed a raid plan, which included surveillance and the use of a postal inspector dressed as a mail carrier who would deliver the package.

{¶7}    Later that day, Sgt. Blust and Detective Wayne Liggett drove by the area and the delivery location to check vehicles and license plates at the address as well as ascertain a description of the house.  During the drive-by, Sgt. Blust and Det. Liggett observed Appellant speaking with two females inside a vehicle parked in the driveway of 222 Penn Ave.  The controlled delivery was scheduled for February 8, 2019.

{¶8}    On February 8, 2019, the postal inspectors and members of their unit arrived at METRICH.  The cocaine was repackaged with the box beacon.  Sgt. Blunt, federal officers, and members of METRICH proceeded to their assigned positions in the vicinity of 222 Penn Ave.  Sgt. Blunt and the agent with him observed a Pontiac Grand Prix with the engine running parked in front of 222 Penn Ave.  When the postal inspector, dressed as mail carrier, delivered the package, he also observed two individuals sitting in

---

[1]An amount enough to meet the major trafficker threshold.

a Grand Prix parked at the address. The postal inspector returned to his vehicle and left the area.

{¶9} Appellant exited the vehicle from the passenger side and grabbed the package. The Grand Prix drove off. Appellant walked through several backyards to another street where the Grand Prix was waiting to pick him up. Shortly after Appellant reentered the vehicle, the box beacon alarm went off, indicating the package had been opened. Officers blocked the street and initiated a stop of the vehicle. When Appellant was arrested, the package was sitting on his lap. Akili Roberts was identified as the driver of the vehicle. Officers learned Roberts was the registered owner of the Grand Prix.

{¶10} Anthony Tambasco, Director of the Mansfield Police Department Forensic Science Laboratory, analyzed the substance found in the package and confirmed it was, in fact, cocaine. The amount of cocaine in Appellant's possession totaled 119.7 grams. The weight of the cocaine which had been removed from the package prior to the controlled delivery was 369.4 grams for a total weight of 489.1 grams.

{¶11} Officers found $461 on Appellant's person and $842 on Roberts' person. Appellant was unemployed at the time of his arrest. Officers seized four cell phones, which were submitted to the Mansfield Crime Laboratory for analysis. Richland County Sherriff's Detective Wayne Liggett, who is assigned to the METRICH Enforcement Task Force, testified he downloaded the contents of three of the phones seized on February 8, 2019. Det. Liggett explained he was unable to break the security encryption on the fourth phone. Photographs were downloaded from one of the phones, which Det. Liggett ascertained belonged to Appellant. A photograph taken on February 5, 2019, depicted Appellant with a large amount of cocaine. On a phone belonging to Roberts, Det. Liggett

found a screen shot of the tracking number for the package Appellant had on his person at the time of his arrest.

{¶12} Appellant testified on his own behalf.  Appellant stated he purchased the property at 222 Penn Ave. in January, 2018.  He explained he never moved into the house, and instead rented the property.  Appellant leased the property to Brandy Miller for a period of one year between February, 2018, and February, 2019.

{¶13} Appellant described the events leading up to his arrest.  He had left his truck at 222 Penn Ave. as he was having issues with the transmission.  Appellant planned to meet his cousin, Akili Roberts, at the house on February 8, 2019, to have his truck repaired.  A friend dropped him off at the Penn Ave. residence. When Roberts arrived, Appellant entered the car and the two men sat and talked while they waited for a man named "Luke", who was going to repair Appellant's truck, to arrive.  Appellant observed the mailman deliver the package.  Because Miller was in county jail, Appellant retrieved the package.  Appellant stated Roberts drove away with Appellant's phone.  When Roberts realized he had Appellant's phone, Roberts was unable to stop because another car was behind his Grand Prix.  Appellant knew Roberts would drive around the block. Appellant decided to walk through his neighbor's backyard to catch up with Roberts. Roberts stopped suddenly when he saw Appellant walking towards the car.  Appellant explained he opened the package because the contents were jiggling around and he was curious.  Appellant indicated he had the large amount of cash on his person as he had gone to the credit union to get money to pay for the repairs to his truck.

{¶14} On cross-examination, Appellant admitted he was not employed on the date of his arrest.  He did not have any documentation to verify the money he received from

the credit union.  Appellant acknowledged he was at the Penn Ave. residence on February 7, 2019, but denied he was waiting for a package.  Appellant could not explain why Roberts had an image of the tracking number for the package on his phone.

**{¶15}** Following the presentation of the evidence and closing arguments, the trial court instructed the jury on the applicable law. After deliberating, the jury found Appellant guilty as charged.  The trial court sentenced Appellant to the mandatory period of incarceration of eleven years.

**{¶16}** It is from his conviction and sentence Appellant appeals, raising the following assignments of error:

I. THE CONVICTIONS IN THIS MATTER ARE NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE VIOLATIVE OF APPELLANT'S RIGHT TO DUE PROCESS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION

II. THE TRIAL COURT COMMITTED PLAIN ERROR BY NOT DISMISSING A JUROR WHO COMMITTED MISCONDUCT.

I.

**{¶17}** In his first assignment of error, Appellant challenges his conviction as against the manifest weight of the evidence.

**{¶18}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses,

and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered'." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶19}** "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses.

**{¶20}** Appellant was convicted of R.C. 2925.11 (A) and (C)(4)(f), which provides:

No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

* *

Whoever violates division (A) of this section is guilty of one of the following:

* *

(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:

* *

(f) If the amount of the drug involved equals or exceeds one hundred grams of cocaine, possession of cocaine is a felony of the first degree, the

offender is a major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term. R.C. 2925.11.

{¶21} Appellant argues the state failed to prove he knowingly possessed the cocaine found in the package. He points to his testimony at trial in which he acknowledged he was outside the Penn Ave. residence, but noted he was merely waiting for an individual by the name of "Luke" to arrive to repair his truck. Roberts arrived and Appellant sat in his vehicle as he continued to wait. Appellant observed the carrier deliver the package. Appellant explained, because he knew Brandy Miller, who rented the home from him, was in jail, he picked up the package.

{¶22} " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Former R.C. 2925.01(L), current R.C. 2925.01(K). However, possession may be actual or constructive. *State v. Garza*, 5th Dist. Stark No. 2020CA00018, 2020-Ohio-4001, ¶16, citing *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98 (1989).

{¶23} To establish constructive possession, the evidence must prove the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351(1976). Dominion and control may be proven by circumstantial evidence alone. *Garza*, supra, at ¶16, citing *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93 (2000). Circumstantial evidence establishing the defendant was located in very close proximity to the contraband may show constructive

possession. *State v. Butler,* supra*; State v. Morales*, 5th Dist. Licking No. 2004 CA 68, 2005-Ohio-4714, ¶ 50. "Establishment of ownership is not required." *State v. Rastbichler*, 2d Dist. Montgomery No. 25753, 2014-Ohio-628, ¶ 33. The issue of whether a person charged with drug possession knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998).

{¶24} Upon review of the evidence as set forth in our Statement of the Case and Facts, set forth supra, as well as the testimony presented at trial, we find Appellant's conviction was not against the manifest weight of the evidence. On February 7, 2019, Sgt. Blust received a phone call from U.S. postal inspectors advising him they had intercepted a package containing cocaine with an intended delivery address of 222 Penn Ave., Mansfield, Ohio. Postal inspectors and Sgt. Blust developed a raid plan for a controlled delivery.

{¶25} Later that day, Sgt. Blust and Det. Liggett drove by the area to check vehicles and license plates at the address as well as to ascertain a description of the house. During the drive-by, Sgt. Blust and Det. Liggett observed Appellant speaking with two females inside a vehicle parked in the driveway of 222 Penn Ave. The controlled delivery was scheduled for the following day.

{¶26} On February 8, 2019, Sgt. Blunt, federal officers, and members of METRICH proceeded to their assigned positions in the vicinity of 222 Penn Ave. Officer Blunt and the agent with him observed a Pontiac Grand Prix parked with the engine running in front of 222 Penn Ave. The postal inspector, dressed as a mail carrier, also

observed two individuals sitting in a Pontiac Grand Prix parked at the address as he delivered the package.

**{¶27}** After the postal inspector returned to his truck and left, Appellant exited the vehicle and grabbed the package. The Grand Prix drove off. Appellant walked through several backyards to another street where the Grand Prix was stopped on the street, waiting to pick him up. Appellant reentered the vehicle and immediately opened the package. Officers blocked the street and initiated a stop of the vehicle. When Appellant was arrested, the package was sitting on his lap. Pictures of drugs were found on Appellant's cell phone. A picture taken on February 5, 2019, depicted Appellant with a large amount of cocaine. A screen shot of the package tracking number was found on Roberts' phone.

**{¶28}** The jury was free to accept or reject any or all of the evidence offered by the parties and assess the witnesses' credibility. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State* v. *McGregor*, 5th Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, 2016 WL 294299. The jury clearly believed the testimony of the state's witnesses, over Appellant's explanation of the events, and concluded Appellant was aware of the contents of the package; therefore, possessed the cocaine in question.

**{¶29}** Upon review of the entire record, including reading the entire transcript, we find Appellant's conviction was not against the manifest weight of the evidence.

**{¶30}** Appellant's first assignment of error is overruled.

II

{¶31} In his second assignment of error, Appellant maintains the trial court committed plain error by failing to dismiss a juror who committed misconduct. We disagree.

{¶32} Before closing arguments, the trial court learned Det. Wheeler, one of the state's witnesses, had overheard a comment made by Juror No. 5 to Juror No. 9, while the three men were in the restroom. Juror No. 9 remarked, "This is a hard case, isn't it?", or something to that effect. Juror No. 5 did not respond. In the presence of counsel, the trial court brought Juror No. 9 into chambers to inquire of him. Juror No. 9 indicated he had not formed or expressed any opinions, was able to keep an open mind, and had not decided the case. Likewise, the trial court brought Juror No. 5 into chambers to inquire of him. Juror No. 5 acknowledged making the comment, but stated he had not formed an opinion or made a decision about the case. The trial court suggested Juror No. 5 be made the alternate. The prosecutor and counsel for Appellant agreed.

{¶33} Where the defense did not request a remedy at trial and expressed no dissatisfaction with the trial court's handling of alleged juror misconduct, we review for plain error. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 185.

{¶34} Pursuant to Crim.R. 52(B), notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 91, 372 N.E.2d 804 (1978). Generally, a court will not reverse a judgment based upon juror misconduct unless the complaining party shows they were prejudiced by the misconduct. *State v. Mack*, 8th Dist.

Cuyahoga No. 93091, 2010-Ohio-1420, ¶ 16, citing *State v. Keith*, 79 Ohio St.3d 514, 526, 684 N.E.2d 47 (1997).

**{¶35}** Appellant submits the trial court should have dismissed Juror No. 5, asking, "What happens if a juror were to get ill?" Brief of Appellant at 7. Appellant's question is merely speculative. Juror No. 5 was made the alternate and did not participate in deliberations. None of the jurors became ill or were, in any other way, unable to complete deliberations. Speculation is outside the scope of this Court's review. We find Appellant is unable to establish he was prejudiced by the misconduct. Thus, we find that no plain error exists which has caused a manifest miscarriage of justice in the case *sub judice.*

**{¶36}** Appellant's second assignment of error is overruled.

**{¶37}** The judgment of the Richland County Court of Common Pleas is affirmed.


By: Hoffman, P.J.
Gwin, J. and
Baldwin, J. concur