[Cite as *State v. Mathias*, 2021-Ohio-423.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2020CA0001 |
| | : | |
| DARRELL L. MATHIAS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Morrow County Court of
Common Pleas, Case No. 2019 CR
0082

JUDGMENT:                AFFIRMED

DATE OF JUDGMENT ENTRY:        February 16, 2021

APPEARANCES:

For Plaintiff-Appellee:              For Defendant-Appellant:

CHARLES S. HOWLAND              R. JESSICA MANUNGO
MORROW COUNTY PROSECUTOR          ASST. STATE PUBLIC DEFENDER
                        250 East Broad St., Suite 1400
DAVID HOMER                  Columbus, OH 43215
60 East High Street
Mt. Gilead, OH 43338

*Delaney, J.*

{¶1} Defendant-Appellant Darrell L. Mathias appeals his conviction and sentence by the Morrow County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

**The Stop**

{¶2} On March 2, 2019, while stopped at a Marathon gas station in Morrow County, Sheriff's Deputy Joseph Delanis ran the license plate of a car stopped at the gas station. Dispatch informed him the registered owner of the car was a woman named Jennifer Marcum and she had an active warrant out of Franklin County.

{¶3} Deputy Delanis followed the car onto southbound I-71 and effectuated a traffic stop when he determined a woman was driving the car. After the car stopped on the side of the highway, Deputy Delanis approached and asked the woman driver for identification. A man was sitting in the front passenger seat and was identified as Defendant-Appellant Darrell L. Mathias. The woman identified herself as Michelle Purcell and gave the deputy a Social Security number. Deputy Delanis returned to his cruiser to run the number and speak to dispatch. While he was in his cruiser, he noticed the man in the passenger seat fidgeting in his seat.

{¶4} Deputy Delanis ran the Social Security number and it did not return. After receiving the false Social Security number, Deputy Delanis told the woman to exit the vehicle. He asked the woman about the differences in eye color and height listed in the BMV records for Michelle Purcell and Jennifer Marcum. The woman admitted that she

was Jennifer Marcum. She stated that she and her husband, Mathias, were driving to a motel in Morrow County after visiting their son in the hospital.

{¶5} Deputy Delanis placed Marcum under arrest for her warrant and for falsification. Dispatch advised that Mathias's driver's license was suspended. Deputy James Coulter of the Morrow County Sheriff's Department and Trooper Jacob Dickerson of the Ohio State Highway Patrol had arrived on the scene to assist. Deputy Coulter had his K-9 with him, and he ran the dog around the car, but the dog did not give a positive alert to the vehicle. The officers determined that Marcum's vehicle needed to be towed because Marcum was under arrest and Mathias had a suspended license. Before the vehicle was towed, the officers were required to conduct an inventory search of the vehicle.

{¶6} Deputy Coulter conducted the vehicle inventory. There was an armrest in the center console area of the car. Deputy Coulter flipped up the armrest and found a cell phone. Next to the cell phone, he found a crystalline substance that appeared to be methamphetamine. Deputy Coulter next found a glass pipe similar to a meth pipe in between the passenger seat and center seat area. He reached under the passenger seat and found a locked box. The officers asked Marcum and Mathias who owned the locked box and both denied ownership. Neither Marcum nor Mathias admitted to having a key to the locked box. Mathias and Marcum denied any knowledge of anything illegal in the vehicle.

{¶7} Mathias and Marcum stated they did not know what was in the locked box. Trooper Dickerson pulled the box open. The box contained a set of scales, a weight to test the scales, three Suboxone strips, a small glass pipe, pieces of tin foil, a plastic

baggie containing a white crystalline substance, two baggies containing a black substance, a plastic baggie containing a blue crystalline powder, a hotel room key card, and two $100 bills.

{¶8}   While the cell phone was in the officers' possession during the inventory, a notification for a Facebook Messenger message appeared on the screen. Deputy Coulter was able to read the message without unlocking the cell phone. The message was from Hank Smith and it said, "Bro, you are just as likely to go to jail up there, if not more so. As long as you are in freeways you are better off. Man, I'm so salty, Bro. I'm out and needed to get that half from you." Mathias admitted he owned the cell phone, but he said that Marcum also used the cell phone.

{¶9}   Mathias was subsequently arrested. The box and items from the car were transferred to Deputy Delanis and placed into evidence at the Sheriff's Office.

{¶10} The items found in the car and the box were submitted to the Ohio Bureau of Criminal Investigation. It was determined the substances found in the car and the box were 0.12 grams of methamphetamine, 21.58 grams of methamphetamine, and 0.38 grams of heroin.

**The Road to Trial**

{¶11}  On April 25, 2019, the Morrow County Grand Jury indicted Mathias on four counts: (1) complicity to aggravated trafficking in drugs (methamphetamine), a second-degree felony in violation of R.C. 2923.03 and 2925.03(A)(2) and (c)(1)(d); (2) complicity to aggravated possession of drugs (methamphetamine), a second-degree felony in violation of R.C. 2923.03 and 2925.11(A) and (c)(1)(c); (3) complicity to aggravated possession of drugs (heroin), a fifth-degree felony in violation of R.C. 2923.03 and

2925.11(A) and (c)(6)(a); and (4) complicity to possession of drug paraphernalia, a fourth-degree misdemeanor in violation of R.C. 2923.92 and 2925.14(c). A warrant for Mathias's arrest was issued on April 30, 2019.

{¶12} The Sheriff's Return of Service Warrant upon Indictment or Information shows that Mathias was arrested on May 7, 2019. He was held in the Morrow County Correctional Facility.

{¶13} Mathias was arraigned on May 8, 2019. He entered a plea of not guilty to all the charges. He did not waive his right to a speedy trial.

{¶14} Mathis filed his Demand for Discovery on May 8, 2019.

{¶15} On May 16, 2019, the State filed its Reply to Defendant's Request for Discovery and Demand for Reciprocal Discovery. The docket shows the State's response to discovery and reciprocal demand was the only filing made on May 16, 2019.

{¶16} On June 18, 2019, Mathias filed a Motion to Suppress. On June 25, 2019, the trial court ordered the motion to suppress to be heard on August 9, 2019.

{¶17} Mathias filed a Motion for Bond Reconsideration on June 26, 2019. The hearing was held on July 8, 2019 and a judgment entry was filed the same day. The trial court found that Mathias had been in jail since May 7, 2019 and it released Mathias on bond on July 8, 2019.

{¶18} The State filed a response to the Motion to Suppress on July 10, 2019.

{¶19} On July 31, 2019, the State filed a Motion to Revoke Bond. The trial court set the matter for hearing on August 9, 2019. Also, on July 31, 2019, the State filed a Supplemental Reply to Discovery and a Reciprocal Demand for Discovery.

{¶20} On August 2, 2019, Mathias filed a Motion to Continue the suppression hearing scheduled for August 9, 2019.

{¶21} The trial court filed a judgment entry on August 5, 2019 revoking Mathias's bond and issuing a warrant for his arrest. The judgment entry stated, "The time within which to try this matter is hereby tolled."

{¶22} The trial court held a motion hearing on August 9, 2019 and filed an entry the same day. Mathias did not appear for the hearing and the trial court issued a warrant for his arrest. The trial court stated the speedy trial time was tolled pending Mathias's arrest.

{¶23} Mathias was arrested on August 16, 2019 and held in the Morrow County Correctional Facility. The trial court held a bond modification hearing on August 26, 2019. By judgment entry filed on August 27, 2019, the trial court set Mathias's bond to $50,000 cash or 10% surety. The matter was set for a pretrial and suppression motion hearing on September 10, 2019 and jury trial on October 7, 2019.

{¶24} On September 5, 2019, the State filed a Motion to Continue the suppression hearing due to the unavailability of a witness, Deputy Coulter. The trial court issued a judgment entry on September 10, 2019 granting the motion to continue due to good cause shown. The suppression hearing was continued to October 4, 2019. The trial court also denied Mathias's motion to be released on his own recognizance.

{¶25} The State filed a motion on September 20, 2019 to order the Morrow County Sheriff to not release Mathias to any other agency. The trial court granted the motion on September 24, 2019. Mathias also had criminal proceedings pending in Franklin County.

{¶26} On October 2, 2019, the State filed a Motion to Continue the trial scheduled for October 7, 2019. The jury commission had failed to issue summons for the jurors for the October 7, 2019 jury trial.

{¶27} Mathias withdrew his Motion to Suppress on October 4, 2019.

{¶28} On October 7, 2019, the trial court granted the motion to continue the jury trial. The jury trial was rescheduled to October 21, 2019.

{¶29} The State filed a Supplemental Reply to Mathias's discovery request and a demand for reciprocal discovery on October 18, 2019.

**The Jury Trial**

*Motion to Dismiss*

{¶30} The jury trial commenced on October 21, 2019. Before the start of the trial and out of the presence of the jury, counsel for Mathias made an oral Motion to Dismiss based on a violation of his right to a speedy trial. He argued that from the date of arrest on May 1, 2019, to the date of trial on October 21, 2019, more than 270 days had passed. (T. 98-99). The State argued that considering the tolling periods, 153 to 177 days had passed. (T. 98).

{¶31} One of the issues affecting the calculation of dates was that simultaneous to the Morrow County proceedings, Mathias also had pending criminal proceedings in Franklin County. On August 6, 2019, while Mathias was released on bond from Morrow County, Mathias was arrested in Franklin County. He had a Rule 4 hearing on August 7, 2019. (T. 98). Because of his arrest in Franklin County, Mathias did not attend the August 9, 2019 hearing in Morrow County and a warrant was issued for his arrest. Mathias was arrested on August 16, 2019 and transferred to the Morrow County Correctional Facility.

Mathias argued that while he had pending charges in Franklin County, he was never held in the Franklin County case. (T. 100). When he was held in the Morrow County Correctional Facility, it was solely on the Morrow County charges. (T. 100).

{¶32} The trial court noted that raising the motion the day of trial put the trial court at a disadvantage because it could only review the case file while on the bench. After hearing the parties' arguments, the trial court stated it was inclined to follow the State's representation as to the speedy trial time. (T. 99).

{¶33} On October 22, 2019, the trial court issued a written judgment entry denying Mathias' motion to dismiss. The trial court found the following:

> The State of Ohio went through the time line from the date of arrest on May
>
> 7, 2019 to date of trial on October 21, 2019 and calculated time expired as
>
> 153 days calculated as follows:
>
> 1. May 7, 2019 to May 8, 2019 – credit for 6 days (3 days for 1 credit) since
>
> he was incarcerated;
>
> 2. May 9, 2019 to May 16, 2019 – time tolled for discovery;
>
> 3. May 17, 2019 to June 17, 2019 – credit for 96 days (3 days credit for 1)
>
> since defendant was incarcerated;
>
> 4. June 18, 2019 to October 3, 2019 – time tolled since the Defendant filed
>
> a Motion to Suppress on June 18, 2019 and withdrew it on October 3, 2019;
>
> 5. October 3, 2019 to October 21, 2019 – credit for 51 days (3 days credit
>
> for 1) since the defendant was incarcerated.

*Evidence at Trial*

{¶34} At trial, the State presented the testimony of the Morrow County Sheriff Deputies Delanis and Coulter and Ohio State Highway Patrol Trooper Dickerson describing the stop and the evidence found in the car.

{¶35} The State also presented Jennifer Marcum as a witness. Marcum was originally indicted on four counts: (1) complicity to aggravated trafficking in drugs, a second-degree felony; (2) aggravated possession of drugs, a second-degree felony; (3) aggravated possession of drugs, a fifth-degree felony; and (4) complicity to possession of drug paraphernalia, a fourth-degree misdemeanor. On October 16, 2019, Marcum entered into a plea agreement with the State wherein the State dismissed three charges and Marcum entered a guilty plea to complicity to aggravated possession of drugs, a felony of the third degree. (T. 330). The State recommended probation and the trial court later sentenced her to 180 days in jail, with 92 days credit, to be served concurrently with a sentence based on a conviction in Delaware County. Marcum testified that part of the plea agreement was that she testified at Mathias's trial, but she was going to testify against him anyway. (T. 319). Marcum had a prior criminal history of felony drug convictions, receiving stolen property, and identity theft. (T. 331).

{¶36} Marcum testified she was in a romantic relationship with Mathias in February 2019. (T. 312). During January and February 2019, Marcum was consistently under the influence of methamphetamines. (T. 315). Before they were pulled over, she and Mathias had not slept for days due to methamphetamine usage. (T. 322). They did not have a permanent residence and Mathias financially supported Marcum. She never witnessed Mathias sell drugs, but she saw him furnish heroin, methamphetamine, and

Suboxone to people so she and Mathias could stay at their home. (T. 340). Marcum did not use heroin because she did not use needles; she was a snorter. (T. 336).

{¶37} Marcum previously observed the locked box in Mathias's possession. She testified that they had stopped at the house of Mathias's friend. The friend had a bag containing items that belonged to Mathias and his ex-girlfriend. (T. 323). The locked box was inside the bag. (T. 323). When Mathias opened the box in Marcum's presence, she saw that the box was filled with needles and heroin – drug instruments she said the ex-girlfriend used. (T. 317).

{¶38} On March 2, 2019, she and Mathias were going to the Motel 6 in Mount Gilead when she stopped at the Marathon gas station. She was then pulled over on I-71 by Deputy Coulter. (T. 313). She understood she was pulled over based on a warrant for her arrest for charges of receiving stolen property and misuse of a credit card. (T. 314). Mathias knew she had a warrant, and he gave Marcum the name and Social Security number of the mother of his children to give to the police officer. (T. 315). Mathias told her to say to the officer that they had a son in the hospital. (T. 320). She knew there was a pipe in the car because they were both smoking off it and that there was a small package of methamphetamine in the car, but she thought the package was in Mathias's pocket. (T. 316, 321). Marcum testified she did not know about the locked box under the front passenger seat of the car until she was arrested by the Deputy. (T. 316). Marcum had last seen Mathias with the box on March 2, 2019, but she did not know it was in the car. Mathias always had access to the car. (T. 318).

{¶39} At the conclusion of the evidence, counsel for Mathias moved for a directed verdict on all counts pursuant to Crim.R. 29. (T. 359). The trial court granted the motion

to dismiss the charge of complicity to aggravated trafficking in drugs. It denied the motion to dismiss the remaining charges. (T. 360-361).

{¶40} The jury found Mathias guilty of the remaining charges. (T. 403). The trial court ordered a presentence investigation and set the matter for a sentencing hearing. (T. 404).

{¶41} The trial court held a sentencing hearing on December 11, 2019. The trial court sentenced Mathias to four years in prison on Count Two, one year in prison on Count Three, and 30 days on Count Four, all to be served concurrently with Count Two. (Journal Entry of Sentence, Dec. 11, 2019).

{¶42} It is from this conviction and sentence that Mathias now appeals.

## ASSIGNMENTS OF ERROR

{¶43} Mathias raises two Assignments of Error:

{¶44} "I. THE TRIAL COURT ERRED IN DENYING MR. MATHIAS' MOTION TO DISMISS THE CHARGES AGAINST HIM FOR A VIOLATION OF HIS SPEEDY TRIAL RIGHTS UNDER R.C. 2945.71 AND R.C. 2945.73.

{¶45} "II. THE TRIAL COURT VIOLATED DARRELL MATHIAS' RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR COMPLICITY TO AGGRAVATED POSSESSION OF DRUGS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## ANALYSIS

## I. SPEEDY TRIAL

{¶46} Mathias argues in his first Assignment of Error that the trial court erred when it denied his motion to dismiss based on a violation of his right to a speedy trial. Upon our review of the relevant dates and law, we disagree.

**Standard of Review**

{¶47} Speedy-trial provisions are mandatory and are encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. *State v. Ladd*, 56 Ohio St.2d 197, 200, 383 N.E.2d 579 (1978). "The statutory speedy trial provisions, R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state." *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589, syllabus (1980). Pursuant to R.C. 2945.73, a person who is not brought to trial within the proscribed time periods found in R.C. 2945.71 and R.C. 2945.72 "shall be discharged" and further criminal proceedings based on the same conduct are barred.

{¶48} A speedy-trial claim involves a mixed question of law and fact. *State v. Wood*, 5th Dist. Fairfield No. 2020 CA 00023, 2021-Ohio-2, 2021 WL 21977, ¶¶ 19-20 citing *State v. Larkin*, 5th Dist. Richland No. 2004-CA-103, 2005-Ohio-3122. As an appellate court, we must accept as true any facts found by the trial court and supported by competent, credible evidence. We apply a de novo standard of review with regard to legal issues. When reviewing the legal issues presented in a speedy-trial claim, we must strictly construe the relevant statutes against the State. *Id.* citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706, 709 (1996); *State v. Colon*, 5th Dist. Stark No. 09-CA-232, 2010-Ohio-2326, ¶12.

{¶49} R.C. 2945.71(C)(2) requires "[a] person against whom a charge of felony is pending * * * be brought to trial within two hundred seventy days after his arrest." Mathias

contends he was not brought to trial within 270 days of his arrest. He argues that considering the relevant dates and law, he was brought to trial in 354 days, which is in contravention of the statutory speedy trial provisions. The State contends that depending on this Court's interpretation of the law, the speedy trial time can be calculated as either 1 day or 167 days between the date of arrest and commencement of trial.

**Calculation of the Dates**

{¶50} In his appellate brief, Mathias contends the trial court erred as to its calculation of the speedy trial days pursuant to R.C. 2945.72. We examine the relevant dates and utilize the record to confirm the dates Mathias and the State use in its arguments as to whether Mathias was brought to trial within 270 days of his arrest.

<u>Date of Arrest</u>

{¶51} The first important date in calculating speedy trial time is the date Mathias was arrested. The statutory time limits for speedy trial begin to run on the day after the date of arrest or service of summons. *State v. King*, 5th Dist. Perry No. 17-CA-00009, 2018-Ohio-3232, 2018 WL 3831512, ¶ 36 citing R.C. 2945.71(B)(1); *State v. Steiner*, 71 Ohio App.3d 249, 250-251, 593 N.E.2d 368 (9th Dist. 1991).

{¶52} The trial court issued the warrant upon indictment on April 30, 2019. In his appellate brief, Mathias contends he was arrested on May 1, 2019. The trial court stated in its judgment entry denying the motion to dismiss that Mathis was arrested on May 7, 2019. We have reviewed the record in this case and find the trial court was correct as to the date of arrest. The Sheriff's Return of Service Warrant upon Indictment or Information shows that Mathias was arrested on May 7, 2019. After his arrest, Mathias was held in the Morrow County Correctional Facility and arraigned on May 8, 2019.

{¶53} In its October 22, 2019 judgment entry, the trial court correctly stated Mathias was arrested on May 7, 2019. It calculated the speedy trial dates as "May 7, 2019 to May 8, 2019 – credit for 6 days (3 days for 1 credit) since he was incarcerated." (Judgment Entry, Oct. 22, 2019). As we stated above, however, the statutory time limits for speedy trial begin to run on the day *after* the date of arrest. The trial court erred when it counted May 7, 2019 as a speedy trial date. The trial court should only have counted May 8, 2019 as a speedy trial date.

{¶54} R.C. 2945.71(E) provides "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." In *State v. McDonald*, 48 Ohio St.2d 66 (1976), the Ohio Supreme Court held the triple count provision applies "only to those defendants held in jail in lieu of bail solely on the pending charge." *Id.* at syllabus. The trial court correctly gave Mathias three-for-one credit because he was incarcerated on May 7, 2019 and May 8, 2019, but the trial court should have only counted May 8, 2019, the day after Mathias's arrest. As such, Mathias was entitled to 3 days credit, not 6 days credit.

<u>Response to the Request for Reciprocal Discovery</u>

{¶55} On May 8, 2019, Mathias filed a discovery motion. On May 16, 2019, the State filed the State's reply to Mathias's discovery demand and a reciprocal demand for discovery.

{¶56} When making his argument that he was brought to trial beyond 270 days of his arrest, counsel for Mathias stated that Mathias filed the reply to the State's request for reciprocal discovery on May 16, 2019. (T. 97). In its October 22, 2019 judgment entry, the trial court stated that time was tolled for discovery from May 9, 2019 to May 16, 2019.

Mathias states in his appellate brief that his reply to the State's demand for reciprocal discovery was made on May 16, 2019. To demonstrate that he filed a reply to the State's demand for reciprocal discovery, Mathias cites the transcript of the trial wherein trial counsel stated that he filed the response on May 16, 2019. (T. 97).

{¶57} The State contends Mathias is incorrect as to the date because he never responded to the State's request for reciprocal discovery. Upon our review of the record, we agree. The only filing in the record on May 16, 2019 is the State's reply to Mathias's discovery demand and a reciprocal demand for discovery. We have reviewed the entire record and find that Mathias did not file a response to the State's request for reciprocal discovery.

{¶58} R.C. 2945.72 outlines circumstances that justify an extension of the statutory speedy-trial time. In R.C. 2945.72(D), the statute reads:

> The time within which an accused must be brought to trial, or, in the case
> of felony, to preliminary hearing and trial, may be extended only by the
> following:
>
> * * *
>
> (D) Any period of delay occasioned by the neglect or improper act of the
> accused."

{¶59} In *State v. Palmer*, the Ohio Supreme Court held that "the failure of a criminal defendant to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D)." 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, paragraph one of syllabus. The criminal defendant in *Palmer* responded to the state's reciprocal

discovery request 60 days after the request. When the defendant filed a motion to dismiss based on a violation of the speedy trial statute, the state responded that the speedy trial time was tolled for 60 days for the defendant's failure to respond to the reciprocal discovery. *Id.* at ¶ 7. The trial court credited the state 30 days of the 60 days that had expired between the state's request for reciprocal discovery and the defendant's response. *Id.* The Supreme Court held it was the role of the trial court to determine the date by which the defendant should have reasonably responded to a reciprocal discovery request based on the totality of the facts and circumstances of the case, including the time established for response by local rule, if applicable. *Id.* at ¶ 24.

{¶60} In this case, when the trial court calculated the relevant dates, it relied upon Mathias's assertion that he filed a response to the State's reciprocal discovery request on May 16, 2019. It found time was tolled for discovery from May 9, 2019 to May 16, 2019. The trial court then gave Mathias credit for 96 days (three days credit for one) from May 17, 2019 to June 17, 2019, because Mathias was incarcerated during this time. This was in error. Mathias did not respond to discovery and pursuant to R.C. 2945.72(D), his failure to respond constitutes neglect that tolls the running of the speedy trial time. However, based on our analysis below of the remaining dates, we find the trial court's error as to the response date to be harmless and we further find it is unnecessary to remand the matter to the trial court for a determination of a reasonable response date.

<u>Mathias's Motion to Suppress</u>

{¶61} Mathis filed a motion to suppress on June 18, 2019. Pursuant to R.C 2945.72(E), time is tolled for any period necessitated by reason of a motion made or instituted by the accused. On June 25, 2019, the trial court scheduled the matter for an

evidentiary hearing on August 9, 2019. Mathias was released on bond on July 8, 2019. The State filed its response to the motion to suppress on July 10, 2019.

{¶62} Motions filed by an accused in a criminal prosecution toll the speedy trial period only to the extent that the delay is reasonable and necessary for the court to rule on the same. *State v. Morgan*, 5th Dist. Ashland No. 17-COA-008, 2017-Ohio-9142, 91 N.E.3d 793, ¶ 46 citing *State v. Arrizola*, 79 Ohio App.3d 72, 76, 606 N.E.2d 1020 (3rd Dist.1992). In this case, Mathias's intervening actions delayed the proceedings on the motion to suppress. The August 9, 2019 evidentiary hearing did not go forward because Mathias violated the conditions of his bond, which was revoked by the trial court on August 5, 2019 and a warrant was issued for his arrest. Mathias was arrested on August 16, 2019 and incarcerated.

{¶63} On August 27, 2019, the trial court continued the evidentiary hearing to September 10, 2019. On September 5, 2019, the State moved to continue the evidentiary hearing because Deputy Coulter, the officer who conducted the inventory search of the vehicle, was unavailable for the hearing due to a prior scheduled training. The trial court found good cause to continue the hearing to October 4, 2019 and tolled the time therein. R.C. 2945.72(H) states, "[t]he time within which the accused must be brought to trial, or, in the case of a felony, to preliminary hearing and trial, may be extended only the following: * * * [t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72 permits the trial court to extend speedy trial time as long as the length of time is reasonable and the reason for the continuance is indicated in the judgment entry. "[W]here the trial record affirmatively demonstrates the necessity for a

continuance and the reasonableness thereof, such a continuance will be upheld." *State v. Fliger*, 5th Dist. Richland No. 2019 CA 0063, 2020-Ohio-753, 2020 WL 1030772, ¶ 26 quoting *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 62.

{¶64} Mathias withdrew his motion to suppress on October 4, 2019.

{¶65} In its October 22, 2019 judgment entry, the trial court found that time was tolled from June 18, 2019 to October 3, 2019, the date Mathias filed the motion to suppress and the date Mathias withdrew the motion to suppress. We note the trial court incorrectly stated that Mathias withdrew his motion to suppress on October 3, 2019. The record shows Mathias filed his motion to withdraw the motion to suppress on October 4, 2019. We find the trial court's finding to be supported by the relevant law. Time was tolled from June 18, 2019 to October 4, 2019.

{¶66} While the motion to suppress was pending, Mathias was incarcerated from August 16, 2019 to date of trial, October 21, 2019. In the October 22, 2019 judgment entry, the trial court gave Mathias credit for 51 days (three days credit for one) from October 3, 2019 to October 21, 2019.

## No Speedy Trial Violation

{¶67} The State contends in its appellate brief that the trial court's calculation of time was in favor of Mathias, as there were other events that tolled the speedy trial time. The State contends if we calculate the time based on Mathias's failure to respond to reciprocal discovery, the speedy trial time should be one day. If considering that Mathias was in the Morrow County Correctional Facility while he was simultaneously being prosecuted in Franklin County, the State argues Mathias should not be entitled to the triple-count provision. The trial court gave Mathias the benefit of the triple-count provision

in all its calculations. Finally, on October 2, 2019, the State filed a motion to continue the trial date filed by the State because of a jury commission error, which the trial court found reasonable and continued the trial from October 7, 2019 to October 21, 2019.

{¶68} Based on our review of the record as to the dates and the relevant law applicable to those dates, we find the trial court committed harmless error in its computation of dates when it calculated 153 speedy trial days, but its error was to the benefit of Mathias. The trial court erred when it started the speedy trial clock the day of Mathias's arrest, found that Mathias responded to the request for reciprocal discovery, and misidentified the day Mathias filed his withdrawal of his motion to suppress. If the trial court had considered the failure to respond to the reciprocal discovery, the trial court could have credited additional days to the State. Upon this record and the trial court's determination, we find the trial court did not err in denying the motion to dismiss and overrule Mathias's first Assignment of Error

## II. MANIFEST WEIGHT OF THE EVIDENCE

{¶69} Mathias argues in his second Assignment of Error that his conviction for complicity to aggravated possession of drugs was against the manifest weight of the evidence. We disagree.

{¶70} The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), in which the Court distinguished between "sufficiency of the evidence" and "manifest weight of the evidence," finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386. The Court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the

evidence addresses the evidence's effect of inducing belief. *Id.* at 386–387. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. The Court noted that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Thompkins, supra* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶71} To evaluate a manifest-weight claim, a court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, at ¶ 328. The court must decide whether " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶72} In this case, Mathias was convicted of two counts of complicity to aggravated possession of drugs (methamphetamine and heroin) in violation of R.C. 2923.03(A) and 2925.11(A). Mathias does not raise his conviction of possession of drug paraphernalia. R.C. 2925.11(A) states that "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Complicity is defined by R.C. 2923.03(A), which states:

(A) No person, acting with the kind of culpability required for the commission

of an offense, shall do any of the following:

* * *

(2) Aid or abet another in committing the offense;

{¶73} Mathias first contends his conviction was against the manifest of the evidence because Marcum's testimony was self-serving. She entered into a plea agreement with reduced charges in exchange for her testimony. Marcum, however, said that she would have voluntarily testified against Mathias. (T. 319). She had a criminal history involving prior drug convictions. Marcum testified, "I did plead guilty to trafficking in drugs. You know what, I pled guilty to all of my stuff. I'm not going to sit here and waste people's time trying to pretend like I'm something I'm not." (T. 328). The jury in this case found Marcum's testimony credible that she observed Mathias in possession of methamphetamine and the locked box before they were stopped by the police on March 2, 2019.

{¶74} Mathias next argues the evidence presented in the case was uncertain and unreliable. He states that Deputy Delanis could not remember the chain of events during the stop, inventory search, and arrest. He states that his uncertainty made him an unreliable witness. The evidence before the jury was that Deputy Delanis effectuated a traffic stop based on Marcum's outstanding warrant. After her arrest, Deputy Coulter conducted an inventory search of the vehicle and found drugs and drug paraphernalia in the car, including the locked box under the front passenger seat. The officer's memory of the order in which the events occurred during the arrest did not negate the evidence of the drugs and drug paraphernalia discovered during the inventory search of the vehicle. Mathias did not pursue the motion to suppress to question the constitutionality of the stop or search.

{¶75} Finally, Mathias contends that State failed to prove the locked box and drugs within the locked box were connected to Mathias. Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). However, possession may be actual or constructive. *State v. Taylor*, 5th Dist. Richland No. 2019 CA 0117, 2020-Ohio-5097, ¶ 22 citing *State v. Garza*, 5th Dist. Stark No. 2020CA00018, 2020-Ohio-4001, ¶ 16 citing *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98 (1989).

{¶76} To establish constructive possession, the evidence must prove the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351 (1976). Dominion and control may be proven by circumstantial evidence alone. *Garza, supra*, at ¶ 16, citing *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93 (8th Dist.2000). Circumstantial evidence establishing the defendant was located in very close proximity to the contraband may show constructive possession. *State v. Butler, supra*; *State v. Morales*, 5th Dist. Licking No. 2004 CA 68, 2005-Ohio-4714, ¶ 50. "Establishment of ownership is not required." *State v. Rastbichler*, 2nd Dist. Montgomery No. 25753, 2014-Ohio-628, ¶ 33. The issue of whether a person charged with drug possession knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998).

{¶77} Using all the attendant facts and circumstances available, we find the jury did not lose its way when it found Mathias guilty of complicity for aggravated possession of drugs. Marcum testified that she and Mathias were using the glass pipe and the small

amount of methamphetamine found in the car on March 2, 2019. As to the locked box and its contents, Marcum testified that she observed Mathias with the locked box prior to March 2, 2019. The box contained heroin, methamphetamine, and Suboxone. Marcum denied using heroin, but she saw Mathias give heroin to people in exchange for staying in their home. When the Deputy Delanis pulled over the vehicle, Mathias was sitting in the front passenger seat. The locked box was found under the front passenger seat.

{¶78} The jury was free to accept or reject any or all of the evidence offered by the parties and assess the witnesses' credibility. Indeed, the jurors need not believe all of a witness' testimony but may accept only portions of it as true. *State v. McGregor*, 5th Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, 2016 WL 294299. The jury clearly believed the testimony of the State's witnesses and concluded Mathias was aware of the glass pipe, small bag of methamphetamine, and the contents of the locked box as was Marcum; therefore, he aided and abetted Marcum in possession of the drugs in question.

{¶79} Upon review of the entire record, including reading the entire transcript, we find Mathias's conviction was not against the manifest weight of the evidence.

{¶80} The second Assignment of Error is overruled.

**CONCLUSION**

{¶81} The judgment of the Morrow County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, John, J., concur.