[Cite as *State v. Markley*, 2021-Ohio-3340.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 2021 CA 0010 |
| | : | |
| GRACE ELIZABETH MARKLEY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Richland County Court
                             of Common Pleas, Case No. 2020-CR-
                             0541


JUDGMENT:                    AFFIRMED


DATE OF JUDGMENT ENTRY:      September 22, 2021


APPEARANCES:


For Plaintiff-Appellee:                 For Defendant-Appellant:

GARY BISHOP                             R. JOSHUA BROWN
RICHLAND COUNTY PROSECUTOR              32 Lutz Ave.
                                        Lexington, OH 44904
VICTORIA MUNSON
ASSISTANT COUNTY PROSECUTOR
38 South Park Street
Mansfield, OH 44902

*Delaney, J.*

{¶1} Defendant-Appellant Grace Elizabeth Markley appeals her conviction and sentence by the Richland County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} On August 24, 2020, the Richland County Grand Jury indicted Defendant-Appellant Grace Elizabeth Markley for: Count One -- Illegal Conveyance of Drugs of Abuse onto Grounds of a Specified Governmental Facility, a third-degree felony in violation of R.C. 2921.36(A)(2) & (G)(2); Count Two -- Aggravated Trafficking in Drugs, a fourth-degree felony in violation of R.C. 2925.03(A)(2) & (C)(1)(a); and Count Three – Aggravated Possession of Drugs, a fifth-degree felony in violation of R.C. 2925.11(A) & (C)(1)(a). Markley entered a plea of not guilty to the charges.

### Drug Analysis Report

{¶3} Markley filed her demand for discovery on November 5, 2020. The State filed its response to Markley's demand for discovery on November 17, 2020. As part of the State's response, it included a July 22, 2020 Drug Analysis Report completed by Anthony J. Tambasco, forensic scientist with the Mansfield Police Forensic Science Laboratory. The Drug Analysis Report stated the results of the examination of a sealed plastic bag containing crystalline substance in paper submitted by Detective Shoemaker of the Richland County Sheriff's Department on July 20, 2020 was as follows: "Crystalline substance, weighing 0.03 grams, was found to contain Methamphetamine, a Schedule II controlled substance."

{¶4}  The Drug Analysis Report included the following language:

NOTICE TO ACCUSED

This report shall not be prima-facie evidence of the contents, identity, and weight or the existence and number of unit doses of the substance if the accused or the accused's attorney demands the testimony of the person signing the report, by serving the demand upon the prosecuting attorney within seven days from the accused or the accused's attorney's receipt of the report. The time may be extended by a trial judge in the interests of justice.

Markley nor Markley's trial counsel served a demand upon the State for Anthony J. Tambasco's testimony.

### Jury Trial

{¶5} A jury trial commenced on January 4, 2021. The following evidence was adduced at trial.

### Inmate Informant

{¶6} The kitchen staff at the Richland County Jail consists of non-inmate employees subcontracted through Trinity Food Services and inmate employees. N.L. was an inmate at the Richland County Jail for charges relating to drugs and stolen property. In July 2020, N.L. worked on the kitchen staff with Markley, a non-inmate employee of Trinity Food Services.

{¶7} Just prior to July 20, 2020, N.L. had been involved in an investigation of prohibited tobacco products being smuggled into the jail, purportedly through the kitchen staff. He spoke to Sergeant Kristin Gillis, the first shift supervisor with the Richland County Jail, about the tobacco investigation. N.L. then became aware that drugs were going to

be brought into the jail through the kitchen staff. N.L. reported to Sgt. Gillis that on July 20, 2020, Markley was going to bring drugs into the jail during her lunch break.

### Observation and Interception

{¶8} Markley was already at work when N.L. gave Sgt. Gillis his information. Sgt. Gillis reported the information to the Richland County Jail administrator, Lieutenant Jim Myers. Sgt. Gillis and Lt. Myers watched Markley on the jail's surveillance cameras and intended to stop and search her when she re-entered the jail. At approximately 12:30 p.m., Sgt. Gillis and Lt. Myers stepped out of the building and observed a car parked in the jail parking lot, near the dumpsters. Sgt. Gillis saw two people in the car and recognized Markley as the passenger. Sgt. Gillis watched Markley exit the vehicle holding a McDonald's bag. As she walked towards the jail, Sgt. Gillis did not see Markley drop anything on the ground or pick up anything from the ground.

{¶9} As Markley approached a side door near the loading dock, Sgt. Gillis observed that Markley had her cell phone with her, which was prohibited on the jail grounds. Sgt. Gillis advised Markley to leave the building and walk to the front of the jail to secure the cell phone in the lobby area, known as the "Visitation Center." Sgt. Gillis walked to the Visitation Center through the interior of the jail and Markley walked alone outside the jail to the Visitation Center.

### Search and Discovery

{¶10} There is a sign outside of the door to the Visitation Center informing people that they are subject to search at any time and no weapons or drugs are allowed beyond that point. In the Visitation Center, Sgt. Gillis was joined by Sergeant Plantz. Markley was

told to put her belongings down, remove everything from her pockets, and put her hands on the wall.

{¶11} The surveillance video of the Visitation Center was played for the jury. When asked if she had anything in her pockets, Markley said she did not have anything in her pockets and she halfway pulled out the linings of her pockets. Sgt. Gillis conducted a pat down search of Markley after she had her hands against the wall. In Markley's back pocket, Sgt. Gillis discovered a folded piece of paper. Sgt. Gillis opened the folded piece of paper and called over Lt. Myers because the paper had what appeared to be an illegal substance inside.

{¶12} Detective Jason Shoemaker, with the Richland County Sheriff's Department, was informed that a non-inmate employee was suspected of bringing drugs into the jail. It was originally planned that Det. Shoemaker would sit in the parking lot and intercept the employee when she came to the jail, but the jail staff intercepted Markley when she came back from lunch. Det. Shoemaker was given the folded piece of paper and he took it to the Mansfield Police Department Crime Lab for testing. Det. Shoemaker was presented with State's Exhibit 4, the Drug Analysis Report from the Mansfield Police Forensic Science Laboratory completed by Anthony J. Tambasco, forensic scientist. The Drug Analysis Report stated the results of the examination of the piece of paper and its contents was as follows: "Crystalline substance, weighing 0.03 grams, was found to contain Methamphetamine, a Schedule II controlled substance." Trial counsel did not object to Det. Shoemaker's testimony as to the Drug Analysis Report.

{¶13} After Markley was intercepted, Det. Shoemaker became aware that N.L. had sent a "kite" to Captain Blunt, administrator of the Richland County Jail. A "kite" is a

communication from an inmate to a corrections officer. The kite read, "Don't say anything to Grace. She's part of this. It's very important for the jail and kitchen staff. You can take me out saying I have court or see mental health. Do not show this to Grace. It's about a serious issue. Before lunch." State's Exhibit 3.

{¶14} At the close of the State's case, counsel for Markley made a Crim.R. 29 motion for acquittal, which the trial court denied.

{¶15} Markley testified on her own behalf. She stated that on July 20, 2020, she left the jail and walked to a local gas station for lunch. She ran into her grandmother, who had purchased her McDonald's. The grandmother drove her back to the jail. While sitting in the car, Markley picked up the trash in the car, including the piece of paper. Markley did not know to whom the piece of paper belonged, and she did not know the piece of paper had drugs in it. Markley put the piece of paper in her pocket and was going to turn it into her kitchen staff supervisor, but she was intercepted by Sgt. Gillis.

{¶16} Detective Andrew Knee of the Richland County Sheriff's Department testified as a rebuttal witness. When Markley was initially interviewed by Det. Knee, Markley told him she found the piece of paper on the ground. She stated she was not sure if the piece of paper was in her grandmother's car first.

### Conviction and Sentence

{¶17} Counsel for Markley made a Crim.R. 29 motion for acquittal at the conclusion of the trial. The trial court denied the motion.

{¶18} After deliberations, the jury found Markley guilty on all three counts. The trial court held a sentencing hearing on January 8, 2021. The trial court sentenced Markley to 36 months in prison for Count One, Illegal Conveyance of Drugs of Abuse onto

Grounds of a Specified Governmental Facility; 18 months in prison for Count Two, Aggravated Trafficking in Drugs; and merged Count Three, Aggravated Possession of Drugs, with Count One. The sentences were to run concurrently for an aggregate prison term of 36 months. The sentencing entry was filed on January 11, 2021 and it is from this judgment that Markley now appeals.

## ASSIGNMENTS OF ERROR

{¶19} Markley raises two Assignments of Error:

{¶20} "I. THE VERDICTS FOR ALL CHARGES WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} "II. ATTORNEY LILLIAN SOOS COMMITTED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN SHE FAILED TO OBJECT TO DETECTIVE SHOEMAKER'S TESTIMONY CONCERNING ANTHONY TAMBASCO'S REPORT."

## ANALYSIS

### I. and II.

{¶22} Markley contends in her first Assignment of Error that her convictions were against the manifest weight of the evidence. She argues in her second Assignment of Error that she was denied the effective assistance of counsel. We disagree as to both arguments.

### Manifest Weight of the Evidence Standard of Review

{¶23} The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), in which the Court distinguished between "sufficiency of the evidence" and "manifest weight of the evidence," finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386. The

Court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386–387. "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. The Court noted that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Thompkins, supra* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶24} To evaluate a manifest-weight claim, a court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, at ¶ 328. The court must decide whether "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**Evidence of a Controlled Substance and Ineffective Assistance of Counsel**

{¶25} In this section, we address Markley's argument that her conviction was against the manifest weight of the evidence due to the lack of evidence as to a "controlled substance." Markley argues in her second Assignment of Error that she was denied the effective assistance of counsel because counsel failed to object to evidence relating to

the "controlled substance" element. We consider the issues together for ease of discussion.

*Drug Analysis Report*

{¶26} Markley was charged with three crimes where the State had the burden to produce evidence of a "controlled substance." First Markley was charged under R.C. 2921.36, which prohibits the conveyance of certain items onto property of state facilities. The statute states in relevant part:

> (A) No person shall knowingly convey, or attempt to convey, onto the grounds of a detention facility or of an institution, office building, or other place that is under the control of the department of mental health and addiction services, the department of developmental disabilities, the department of youth services, or the department of rehabilitation and correction any of the following items:
>
> * * *
>
> (2) Any drug of abuse, as defined in section 3719.011 of the Revised Code.

"Drugs of abuse" is defined as "any controlled substance as defined in section 3719.01 of the Revised Code, any harmful intoxicant as defined in section 2925.01 of the Revised Code, and any dangerous drug as defined in section 4729.01 of the Revised Code." R.C. 3719.011. Second, Markley was charged with aggravated trafficking in drugs, a violation of R.C. 2925.03(A)(2), which states:

> (A) No person shall knowingly do any of the following:
>
> * * *

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

Thirdly, Markley was charged with R.C. 2925.11(A), aggravated possession of drugs. The statute reads, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶27} Markley contends the State failed to prove that she conveyed, trafficked, or possessed a controlled substance on July 20, 2020. She argues that while the State presented evidence that Markley possessed a folded piece of paper that contained a substance, there was no admissible evidence demonstrating the substance in the folded piece of paper was a "controlled substance." Det. Shoemaker testified that he took the folded piece of paper with the unknown substance to the Mansfield Police Department Crime Lab for testing. On July 22, 2020, Anthony J. Tambasco, forensic scientist with the Mansfield Police Forensic Science Laboratory, completed a Drug Analysis Report that stated the results of the examination of a sealed plastic bag containing crystalline substance in paper was as follows: "Crystalline substance, weighing 0.03 grams, was found to contain Methamphetamine, a Schedule II controlled substance." At trial, Anthony J. Tambasco was not called as a witness to testify to the Drug Analysis Report. Through Det. Shoemaker's testimony and without objection, the State entered the Drug Analysis Report into evidence as State's Exhibit 4. Markley contends that without the testimony of Anthony J. Tambasco, the Drug Analysis Report was inadmissible because Det.

Shoemaker was not qualified to testify to the chemical makeup of the substance. She argues the State failed to meet its burden that Markley conveyed, trafficked, or possessed a controlled substance.

{¶28} R.C. 2925.51(A) states that a laboratory report may constitute prima-facie evidence of content, weight, and identity of controlled substances:

In any criminal prosecution for a violation of this chapter or Chapter 3719. of the Revised Code, a laboratory report from * * * a laboratory operated by another law enforcement agency, * * * and signed by the person performing the analysis, stating that the substance that is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance and the number and description of unit dosages, is prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance. * * * Attached to that report shall be a copy of a notarized statement by the signer of the report giving the name of the signer and stating that the signer is an employee of the laboratory issuing the report and that performing the analysis is a part of the signer's regular duties, and giving an outline of the signer's education, training, and experience for performing an analysis of materials included under this section. The signer shall attest that scientifically accepted tests were performed with due caution, and that the evidence was handled in accordance with established and accepted procedures while in the custody of the laboratory.

{¶29} R.C. 2925.51(C) provides an exception to the rule that a laboratory report prepared under R.C. 2925.51(A) may be prima-facie evidence:

The report shall not be prima-facie evidence of the contents, identity, and weight or the existence and number of unit dosages of the substance if the accused or the accused's attorney demands the testimony of the person signing the report, by serving the demand upon the prosecuting attorney within seven days from the accused or the accused's attorney's receipt of the report. The time may be extended by a trial judge in the interests of justice.

{¶30} R.C. 2925.51 implicates the protection of the Sixth Amendment to the United States Constitution, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), the Supreme Court held that "certificates of analysis" showing the results of the forensic analysis performed on suspected controlled substances fall within the "core class of testimonial statements." *State v. Farrar,* 8th Dist. Cuyahoga No. 93060, 2010-Ohio-2461, 2010 WL 2202929, ¶ 14 quoting *Melendez-Diaz, supra*. A laboratory report is therefore subject to confrontation under the Sixth Amendment, and the analysts who performed the tests are required to testify in person. *Id*. The Court explained that the "certificates" that showed the weight and composition of the substances are functionally identical to live, in-court testimony, as they do "precisely what a witness does on direct examination." *Id*. Accordingly, absent a showing that the analysts were unavailable to testify at trial and the

defendant had a prior opportunity to cross-examine them, the defendant was entitled to confront the analysts at trial. *Id.*

{¶31} The *Melendez–Diaz* Court noted the state of Ohio permitted the defendant to assert, or forfeit by silence, their Confrontation Clause right after receiving notice of the prosecution's intent to use a forensic analyst's report, and stated:

> In their simplest form, notice-and-demand statutes require the prosecution to provide notice to the defendant of its intent to use an analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial. *See*, e.g., Ga.Code Ann. § 35–3–154.1 (2006); Tex.Code Crim. Proc. Ann., Art. 38.41, § 4 (Vernon 2005); Ohio Rev.Code Ann. § 2925.51 (C) (West 2006). Contrary to the dissent's perception, these statutes shift no burden whatever. The defendant always has the burden of raising his Confrontation Clause objection; notice-and-demand statutes simply govern the time within which he must do so. States are free to adopt procedural rules governing objections.

*Farrar*, 2010-Ohio-2461, ¶ 15-16 quoting *Melendez-Diaz*, 129 S.Ct. at 2541; *State v. Jackson*, 5th Dist. Richland No. 2012-CA-20, 2012-Ohio-5548, ¶ 57.

{¶32} As stated above, R.C. 2925.51(A) specifically details the information that the laboratory report must contain. It places a specific obligation on the prosecuting attorney to serve the report on the accused or the accused's attorney. R.C. 2925.51(B). The statute requires that the report must contain notice of the accused's right to demand the testimony of the signer of the report. R.C. 2925.51(D). The statute then specifies that

the report will not be prima facie evidence of the test results if the accused or the accused's attorney demands the testimony of the report's signer by serving the demand upon the prosecuting attorney within seven days of the accused's attorney's receipt of the report, a time that can be extended by the trial judge. R.C. 2925.51(C). "The obvious import of R.C. 2925.51(C) is that if a demand is not made for the testimony of the signer of the report, the report will be prima facie evidence of the test results." *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 16.

{¶33} An examination of the July 22, 2020 Drug Analysis Report at issue in this case indicates that it fully complied with R.C. 2925.51. Markley has made no argument that the Drug Analysis Report and the State's service of the report did not comply with all statutory procedures. "When the State has complied with its obligations under R.C. 2925.21, a defendant's failure to use the procedures of R.C. 2925.51(C) to demand that the laboratory analyst testify constitutes a waiver of the opportunity to cross examine the analyst at trial and allows the analyst's report to be admitted as prima facie evidence of the test results." *State v. Jackson*, 5th Dist. Richland No. 2012-CA-20, 2012-Ohio-5548, ¶ 56 quoting *State v. Pasqualone*, 2009-Ohio-5548, ¶ 43.

{¶34} In this case, Markley and Markley's trial counsel did not utilize the procedures outlined in R.C. 2925.51(C) to demand that Anthony J. Tambasco testify at trial to the July 22, 2020 Drug Analysis Report, thereby rendering the Drug Analysis Report as prima facie evidence of the test results. The Drug Analysis Report identified the substance in the folded piece of paper found in Markley's pocket as methamphetamine, a Schedule II controlled substance. The report was prima facie evidence that the folded piece of paper found in Markley's pocket on July 20, 2020

contained a controlled substance. In her appeal, Markley contends it was against the manifest weight of the evidence to convict her on any charges because there was no evidence of a controlled substance. Based on our above holding, we find the jury did not lose its way and create a manifest miscarriage of justice as to a controlled substance so that Markley's conviction must be reversed.

*Ineffective Assistance of Counsel*

{¶35} In her second Assignment of Error, Markley claims she received the ineffective assistance of counsel because her counsel did not object to Det. Shoemaker's testimony regarding the Drug Analysis Report.

{¶36} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶37} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶38} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice"

prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

{¶39} In *State v. Jackson, supra*, this Court reviewed an argument that the defendant received the ineffective assistance of counsel when trial counsel failed to require the analyst who performed the test on a controlled substance to testify. We referred to *State v. McCausland*, where the Supreme Court explained,

> "an accused's attorney is capable of waiving his [or her] client's right to confrontation by not demanding that a laboratory analyst testify pursuant to the opportunity afforded by [the relevant statute], because whether to cross-examine a particular witness is properly viewed as a decision relating to trial tactics or strategy." [*State v. Pasqualone*] at ¶ 44. We also held that "the procedures of [the statute] adequately protect an accused's right to confrontation, so that an accused who fails to demand the testimony of the analyst pursuant to [the statute] validly waives his opportunity to cross-examine the analyst." *Id*. We arrived at this conclusion after noting that the relevant question for purposes of the waiver inquiry under the Confrontation Clause of the Sixth Amendment was whether the defendant had an opportunity for cross-examination. *Id*. at ¶ 35, 903 N.E.2d 270.

*Jackson* at ¶ 58 quoting *State v. McCausland*, 124 Ohio St.3d 8, 2009–Ohio–5933, 918 N.E.2d 507, 918, N.E.2d 507, ¶ 14. A defendant has no constitutional right to determine trial tactics and strategy of counsel. *Jackson* at ¶ 58 citing *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298 (1999); *State v. Conway*, 108 Ohio St.3d 214, 2006–Ohio–791,

842 N.E.2d 996, ¶ 150; *State v. Donkers*, 170 Ohio App.3d 509, 2007–Ohio–1557, 867 N.E.2d 903, ¶ 183 (11th Dist.). Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. *Id.* When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *Jackson, supra* at ¶ 59 citing *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

{¶40} We found in *Jackson* that the trial counsel's failure to require the analyst who performed the test to testify was a tactical decision. *Id.* at ¶ 60. In *Melendez–Diaz*, the United States Supreme Court observed,

> But it is not surprising. Defense attorneys and their clients will often stipulate to the nature of the substance in the ordinary drug case. It is unlikely that defense counsel will insist on live testimony whose effect will be merely to highlight rather than cast doubt upon the forensic analysis. Nor will defense attorneys want to antagonize the judge or jury by wasting their time with the appearance of a witness whose testimony defense counsel does not intend to rebut in any fashion.

*Id.* at ¶ 60 quoting *Melendez-Diaz, supra* at 557 U.S. at 328.

{¶41} Because we have found no instances of error in this case, we find Markley has not demonstrated that she was prejudiced by trial counsel's performance. Markley's second Assignment of Error is overruled.

**Conveyance of a Drug of Abuse**

{¶42} As part of her first Assignment of Error, Markley argues that the manifest weight of the evidence demonstrated that when she entered the Visitation Center with the folded piece of paper containing methamphetamine, Markley did not convey a drug of abuse onto the grounds of a detention facility. She states she only entered the *lobby* of the Richland County jail, which was not a secured area of the facility, and therefore not in violation of the statute.

{¶43} R.C. 2921.36(A)(1) states that "[n]o person shall knowingly convey, or attempt to convey, onto the grounds of a detention facility * * * any drug of abuse." In her appellate brief, Markley does not cite this Court to the statute or case law where "the grounds of the detention facility" has been defined as only secured areas of the detention facility.

{¶44} At trial, Lt. Myers testified that the secured perimeter and the property of the jail were all considered the premises of the Richland County Jail. (T. 193). Lt. Myers further testified it was prohibited by law to bring drugs inside the lobby or the door near the kitchen, where Markley attempted to enter before Sgt. Gillis stopped her and directed her to the lobby. (T. 193-196). There were signs posted providing notification that drugs were not permitted in the Visitation Center. (T. 195).

{¶45} "Convey" is defined as, "to bear from one place to another." *Webster's Ninth New Collegiate Dictionary* 287 (1989). The evidence in this case demonstrated that Markley came from the jail parking lot and attempted to enter the kitchen of the Richland County Jail through a door with the folded piece of paper containing methamphetamine in her back pocket. She next entered the Visitation Center with the controlled substance

in her back pocket. She walked alone to the Visitation Center and did not dispose of the controlled substance in her back pocket before entering the lobby. When Sgt. Gillis asked Markley if anything was in her pockets, Markley pulled out the lining of her pockets halfway and denied having anything in her pockets when upon a search of person, the folded piece of paper containing methamphetamine was found in her back pocket. The greater amount of credible evidence supports Markley's conviction for illegal conveyance of drugs onto the grounds of a detention facility and was not against the manifest weight of the evidence.

### Trafficking and Pecuniary Gain

{¶46} Markley next argues her conviction for aggravated trafficking in drugs was against the manifest weight of the evidence because the State did not present any evidence that she received a pecuniary gain from bringing the drugs onto the grounds of the detention facility. Markley was charged with a violation of R.C. 2925.03(A)(2), which states:

(A) No person shall knowingly do any of the following:

* * *

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶47} Markley does not cite this Court to the statute or case law that demonstrates pecuniary gain is an element of the offense. The Fourth District Court of Appeals has stated as to R.C. 2925.03(A)(2):

As used in this statute, selling includes delivering, bartering, exchanging, transferring, or gifting. *See* R.C. 2925.01(A) (incorporating R.C. 3719.01 definitions) and 3719.01(AA) (defining "sale"). This definition is broader than the common dictionary definition of "sale." *State v. Adkins*, 80 Ohio App.3d 211, 221, 608 N.E.2d 1152, 1159 (4th Dist.1992); accord Drug trafficking—Elements, Baldwin's Oh. Prac.Crim. L., Section 107:2 (3d ed.). "Ohio has adopted a definition of 'sale' of controlled substances that is broad in scope, calculated to include all transfers of controlled substances regardless of the presence or absence of consideration therefor." *State v. Albritton*, 6th Dist. Wood No. WD–80–48, 1980 WL 351681, *6 (Dec. 26, 1980).

*State v. Bradshaw*, 4th Dist. Scioto No. 17CA3803, 2018-Ohio-1105, 2018 WL 1512846, ¶ 67. The State, therefore, was not required to prove that Markley received consideration or pecuniary gain from drug trafficking on July 20, 2020. Her conviction for aggravated trafficking in drugs, considering her argument on appeal, was not against the manifest weight of the evidence.

**Knowingly Possessed a Controlled Substance**

{¶48} Markley was charged with R.C. 2925.11(A), aggravated possession of drugs. The statute reads, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." She argues the evidence demonstrated that she did not knowingly possess a controlled substance.

{¶49} R.C. 2901.22(B) sets forth the definition of how and when a person acts knowingly,

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶50} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself. *State v. Jacobs*, 5th Dist. Knox No. 20CA000016, 2021-Ohio-1611, 2021 WL 1828102, ¶ 16 citing *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695 (1st Dist. 2001). (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *Johnson, supra* at ¶ 16 quoting *State v. McDaniel*, 2nd Dist. Montgomery No. 16221, 1998 WL 214606, *7 (May 1, 1998); *See also, State v. Butler*, 5th Dist. Holmes No. 2012-CA-7, 2012-Ohio-5030, ¶ 25.

{¶51} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Mathias*, 5th Dist. Morrow No.

2020CA0001, 2021-Ohio-423, ¶ 75 citing *State v. Taylor*, 5th Dist. Richland No. 2019 CA 0117, 2020-Ohio-5097, ¶ 22 citing *State v. Garza*, 5th Dist. Stark No. 2020CA00018, 2020-Ohio-4001, ¶ 16 citing *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98 (1989). Thus, the issue of whether a person charged with drug possession knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Mathias*, 5th Dist. Morrow No. 2020CA0001, 2021-Ohio-423, ¶ 76 quoting *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998).

{¶52} Markley testified at trial that she did not know she possessed a controlled substance. When Markley was initially interviewed by Detective Andrew Knee, Markley told him she found the piece of paper on the ground. (T. 286). She stated she was not sure if the piece of paper was in her grandmother's car first. (T. 286). At trial, Markley testified that she picked up the folded piece of paper from the floor of her grandmother's car. She described her grandmother's car as full of papers and trash. (T. 264). Markley said that of all the papers in her grandmother's car, she found the folded piece of paper on the floor of the car and put that piece of paper in her pocket. She intended to turn in the piece of paper to her kitchen staff supervisor, but she was intercepted by Sgt. Gillis. When asked by Sgt. Gillis if she had anything in her pockets, however, Markley denied having anything in her pockets.

{¶53} We defer to the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witnesses' credibility. "While the trier of fact may take note of the inconsistencies and

resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Johnson*, 2015-Ohio-3113, 41 N.E.3d 104, ¶ 61 (5th Dist.), citing *State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). The jury need not believe all of a witness' testimony but may accept only portions of it as true. *Id.*

{¶54} Using all the attendant facts and circumstances available, we find the jury did not lose its way when it found Markley guilty of aggravated possession of drugs. The jury did not find Markley's testimony credible that she did not know the folded piece of paper contained a controlled substance. Reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find Markley's conviction for aggravated possession of drugs was not against the manifest weight of the evidence.

{¶55} Based on the foregoing, Markley's first Assignment of Error is overruled.

## CONCLUSION

{¶56} The judgment of the Richland County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.